[L. A. No. 11346. In Bank.—September 27, 1929.]

JAMES HERVEY JOHNSON et al., Petitioners, v. BOARD OF SUPERVISORS OF SAN DIEGO COUNTY, Respondent.

W. S. Staley and Jesse George for Petitioners.

Stephen Connell, District Attorney, for Respondent.

THE COURT.—Application for hearing in this court after decision by the District Court of Appeal in and for

the Second District, Division Two, was granted in order that we might make a careful examination of the provisions of the Political Code applicable to taxation for high school purposes. Upon such examination we are satisfied with the correctness of the reasoning and conclusion of the appellate tribunal, and hereby adopt the same as the decision of this court, to wit:

"This is an original proceeding wherein the petitioners seek by the writ of review to annul district tax levies by the board of supervisors of San Diego county for high school purposes. It appears from the pleadings that the petitioners reside, the one in the San Diego High School District and the other in the Sweetwater Union High School District, and that they each pay taxes in their respective districts. On the 4th day of June, 1928, the boards of education of these two districts submitted to and filed with the county superintendent of schools, school budgets showing the purposes for which and the amount of money needed by each of the districts, together with the total estimated receipts, and the remainder necessary to be raised by a tax levy. On June 20, the county superintendent approved the budget of the Sweetwater Union High School District and submitted it to the board of supervisors. On June 26, she followed a like procedure with the budget of San Diego High School District. Both of these budgets indicated that it would be necessary to fix a rate in excess of 75 cents on each $100 of assessed valuation in order to raise the requisite funds. On September 1, 1928, the respondent board fixed the rate of San Diego High School District at 85 cents and of Sweetwater Union High School District at 94 cents, and it is the resolution of the board fixing these rates which petitioners claim is beyond its jurisdiction.

"Their contention in this behalf is based upon section 1755 of the Political Code, which section makes it 'the duty of every high school board to make and file with the Board of Supervisors of each county in which any part of their high school district is situated, on or before the first Monday of September next succeeding the formation of said district, an estimate of the cost of *purchasing a suitable lot, of procuring plans and specifications and erecting a suitable building, of supplying* the same with furniture and necessary apparatus, and of fencing and

ornamenting the grounds, for the accommodation of the school,' unless the board shall have secured temporary quarters or a bond issue has been voted. (Italics ours.) The section further provides that if the board has leased temporary quarters they shall either secure a renewal of the lease before the first Monday in September or submit the estimate mentioned above, and in the event of their failure to submit such a budget to the board of supervisors, makes it the duty of the county superintendent of schools to supply the omission before the second Monday in September. In 1913 there was added to the section this sentence: 'Provided, the total tax for high school purposes shall not exceed seventy-five cents on each one hundred dollars assessed valuation, exclusive of bond and interest rate.' It is this concluding language which petitioners say prohibits a levy for the maintenance and support of high schools in excess of seventy-five cents. Section 1756 of the Political Code, enacted at the same time as section 1755 (i. e., 1909), provides that the board of education of each high school district shall file with the county superintendent of schools an estimate of the total amount necessary to support the high schools of the district, including the amounts necessary for '(a) Teachers salaries; (b) current expenses; (c) books, magazines and apparatus; (d) sites, buildings and furniture; (e) other miscellaneous expenses.' There is no limit designated by this section. In 1921 a new section was added to the Political Code, numbered 1612a, by which it is made the duty of all boards of education, both elementary and high school, to prepare a budget showing all the purposes for which they will need money during the next ensuing school year, the amount of which shall be submitted to the county superintendent of schools for approval. When he has approved it and determined the amount of money (by subtracting from the total estimate the income to be received from other sources) which must be provided by a district school tax, he is required to file it with the board of supervisors, whose duty it then becomes 'to fix such a rate for such district tax as will produce at least the amount of district tax money requested by the particular district.' No limitation of rate is fixed by this section. It does, however, say that 'all acts and parts of acts not in harmony with this section are hereby repealed.'

"Assuming, solely for the purposes of this opinion, that review will lie to test the validity of a resolution such as the one here in question, we are convinced that the levy must be sustained. ■ The usual office of a proviso is to 'except something from the enacting clause, or to qualify or to restrain its generality.' (25 R. C. L. 984.) The United States Supreme Court, speaking through Mr. Justice Story in the case of *Minis* v. *United States*, 15. Pet. (U. S.) 423 [10 L. Ed. 791, see, also, Rose's U. S. Notes], states the rule in this manner: 'It would be somewhat unusual to find engrafted upon an act making special and temporary appropriation, any provision which was to have a general and permanent application to all future appropriations. Nor ought such an intention on the part of the legislature to be presumed, unless it is expressed in the most clear and positive terms, and where the language admits of no other reasonable interpretation. The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview. A general rule, applicable to all future cases, would most naturally be expected to find its proper place in some distinct and independent enactment.' The concluding sentence of this quotation is especially apt in its application to our problem. The learned jurist, in speaking for the same tribunal in *United States* v. *Dickinson*, 15 Pet. (U. S.) 141 [10 L. Ed. 689], throws still further light upon the functions of a proviso by the use of these words: '. . . we are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. *In short a proviso carves exceptions only out of* the enacting clause; and those who set up any such exception must establish it as being within the words as well as within the reason thereof.' (Italics ours.) Our own Supreme Court, in considering the interpretation to be given to a proviso in the case of *People* v. *Morrill*, 26 Cal. 336–355, says: 'This proviso is to be read

in the light of the subject matter,' using the expression 'subject matter' as synonymous with the legislative field occupied by the enacting clause. No doubt this general rule of construction is from time to time modified by other rules of construction when necessity arises. But is there such necessity in the present instance? We think not. . . . If it were intended that the proviso should have a general effect the legislature would undoubtedly have enacted it as a general and independent section rather than to have tied it to a section adopted for very limited purposes. Inferentially, at least, the views we have expressed find support in the case of *Esberg* v. *Badaracco,* 202 Cal. 110 [259 Pac. 730], wherein it was said that the provisions of 1612a made it mandatory that the board of supervisors raise the amount of money found to be necessary by the estimate prepared under its provisions, and the board was required by the decision to fix a rate of $.97338 on each $100 valuation, instead of that previously determined by the board of supervisors to be sufficient, to wit, $.84729. It is stated in the case just cited that 'the law prescribes a tax limit for school purposes,' and this is undoubtedly true, but it seems impossible to escape the conclusion that section 1755 does not restrict the kind of a tax here levied.

"These conclusions render it unnecessary to determine whether the writ of review will lie."

Resolution affirmed.