[L. A. No. 14200.   In Bank.—December 30, 1935.]

FILLMORE UNION HIGH SCHOOL DISTRICT et al.,
Respondents,   v.   KIRK   COBB,   Substituted   for
BLANCHE T. REYNOLDS, as County Superintendent
of Schools, etc., Appellant.

Sheridan, Orr, Drapeau & Bates for Appellant.

Chas. F. Blackstock and Fergus L. Fairbanks for Respondents.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District. Upon further consideration we are satisfied with the correctness of the conclusion reached therein, and we therefore adopt the following opinion of Mr. Justice Thompson, as modified by said court, as the opinion of this court:

"The defendant Blanche T. Reynolds appealed from a judgment enjoining her, as Superintendent of Schools of Ventura County, from apportioning or transferring funds belonging to the several union high school districts which have been joined as plaintiffs in this proceeding, to compensate the Ventura Union High School District as tuition for certain pupils residing outside the last-mentioned district. The appellant contends that it is her duty, as Superintendent of Schools of Ventura County, in the absence of an agreement between the districts involved, to fix the terms and apportion the funds of the respective high school districts so as to authorize eligible pupils residing in the plaintiffs' districts to attend the Ventura Union High School District. The defendant's action in that regard is justified by her under the provisions of sections 3.301 and 3.306 of the School Code. The respondents assert that these statutory provisions are unconstitutional for the reason that they confer an unlawful delegation of legislative authority.

Five separate organized high school districts in Ventura County are joined as plaintiffs in this proceeding. The Ventura school maintains junior college classes which are not conducted in the other schools. For several years pupils who reside in these districts represented by the plaintiffs have attended the Ventura Union High School without the imposition of terms or tuition. The school boards failed to agree upon any such terms or tuition. In the fall of 1932 the Superintendent of Schools of Ventura County fixed the terms and amount of tuition applying to pupils residing in other districts who attend the last-mentioned school and proceeded to apportion the funds of the respective districts in accordance therewith, pursuant to the provisions of sections 3.301 and 3.306 of the School Code. The amount of tuition and the apportionment of school funds of the various districts were specified in a communication from the superintendent to the boards of the several districts as follows:

" 'This is . . . to inform you of the amount of tuition to be transferred from the various high schools in Ventura County sending students to the Ventura High School for the year 1931–32. . . .

" 'The requirements of Chapter 1141 of the Statutes of 1931 . . . prohibiting the attendance of nonresident students at any high school without an agreement between the interested school boards, has put the question up to the County Superintendent of Schools as per said statute, because no such agreement seems possible in Ventura County.

" 'Therefore, these are the terms prescribed for attendance of Ventura County nonresident high school students: Inasmuch as no elementary school district is allowed by law to pay to a junior high school for tuition for its seventh and eighth grade students an amount per unit of average daily attendance greater than the cost per unit in its first six grades of its own school, and, inasmuch as some of these high schools have to tax themselves to the legal limit to maintain their high schools, it is the opinion of the County Superintendent of Schools that the amount of tuition to be paid to the Ventura Union High School District for tuition in the junior college courses for the year 1931–32, and until further notice, should be the difference between the total cost per unit of average daily attendance in the district in which

the student resides and the amount received per unit from the state and county.

" 'In the case of the two very smallest high school districts in the county, where the cost per unit is very high, the amount to be paid should be the difference between the cost per pupil in the Ventura Union High School District and the amount received from the state and county.

" 'Following are the costs and computations showing the amount to be paid to Ventura High School by each district. This transfer will be made at the time when the county high school tax money is received in December, 1932. The units of A. D. A. for which this tuition is transferred are taken from Mr. Van Dellen's report in July, 1932.

### " 'Cost per A. D. A. in High Schools for 1931–32.

| | | |
|---|---|---|
| Fillmore | 219.20 | Cost per A. D. A. |
| Moorpark | 331.80 | " " |
| Nordhoff | 162.79 | " " |
| Oxnard | 234.61 | " " |
| Santa Paula | 188.77 | " " |
| Simi Valley | 289.59 | Cost per A. D. A. |
| Ventura | 200.36 | " " |
| Received from State per A. D. A. | — 24.76 | |
| " " County " " | — 73.50 | |
| Received from both | 98.26 | |

#### Cost per unit to the district.

| | | |
|---|---|---|
| Nordhoff | $162.79 | Total |
| Less | 98.26 | State & County |
| | 64.53 | Cost to District. |
| Santa Paula | $188.77 | |
| Less | 98.26 | |
| | 90.51 | Cost to District. |
| Ventura | $200.36 | |
| Less | 98.26 | |
| | 102.10 | |

All others cost more than Ventura. Therefore the cost to Ventura will be the unit price.

Fillmore .....................$200.36
                             98.26
                             _____
                             102.10

Santa Paula ..................$188.77
                             98.26
                             _____
                             $90.51

Nordhoff .....................$162.79
                             98.26
                             _____
                             64.53

All others 102.10

Therefore the amounts of tuition to be apportioned by the County Superintendent of Schools as required by section 3.306 of the School Code, are as follows:

From Fillmore, with 15 units of A. D. A. in the Junior College Course of the Ventura High School as reported by District Superintendent Van Dellen:

|  |  |  |
|---|---|---|
| | 15 times 102.10 ..............| $ 1531.50 |
| From Moorpark | 2 times 102.10 ..............| 204.20 |
| From Nordhoff | 3 times 64.53 ..............| 193.59 |
| From Oxnard | 35 times 102.10 ..............| 3573.50 |
| From Santa Paula | 54 times 90.51 ..............| 4887.54 |
| From Simi Valley | ...........................| 00.00 |

Total all schools          10390.33

Very truly yours,
(Signed)   BLANCHE T. REYNOLDS
County Superintendent of Schools
M.S.'

"The trial court adopted findings in accordance with the preceding statement of facts, and rendered judgment restraining the defendant from apportioning or transferring funds from the treasuries of the plaintiffs to the Ventura Union High School District as tuition for pupils residing outside the last-mentioned district. From that judgment this appeal was perfected.

"We are of the opinion sections 3.301 and 3.306 of the School Code are not unconstitutional. They do not constitute an unlawful delegation of the legislative authority to a county superintendent of schools. The reasonableness of the rules which were adopted and the amount of tuition required to be paid by pupils living outside of the district are not questioned. We must assume from the absence of a showing to that effect that there was no abuse of discretion on the part of the Superintendent of Schools of Ventura County in fixing the terms and tuition upon which such pupils may attend the Ventura Union High School. Unless the act complained of is unconstitutional as an unlawful delegation of authority to an administrative officer, pupils are not entitled to attend a high school outside of the district in which they reside unless the terms upon which such attendance is permitted have been fixed and determined either by an agreement of the school boards of the districts which are involved or by the superintendent as provided by section 3.301 of the School Code. Section 3.309 of that code provides in that regard:

" 'No student residing in one high school district shall be admitted to the high school of another high school district . . . if terms have not been agreed upon for the admission of such student as required by this article.'

"The two sections of the School Code, upon the asserted unconstitutionality of which the respondents in support of the judgment in this case rely, read as follows:

" '3.301. Any person who is, under the provisions of this article, eligible to attend a high school and who resides in a high school district, may attend a high school in a high school district in the same county, other than that in which he resides, only upon such terms as may be agreed upon by the high school boards of the two districts, or, if such boards fail to agree, on such terms as the county superintendent of schools may prescribe.'

" '3.306. When terms have been made and agreed upon by high school boards as provided for in this article, or, if such boards fail to agree, when terms have been prescribed by the county superintendent or superintendents of schools, as provided in this article, the superintendent of schools of the county in which the person resides is hereby authorized and required to apportion and cause to be paid to the special fund

of the high school district which such person attends, from the funds of the proper high school district or from the unapportioned county fund of his county such amounts as shall have been agreed upon by such high school boards or as shall have been prescribed by such superintendent.'

"The preceding sections do not delegate to the superintendent of schools legislative authority. They merely authorize the adoption of reasonable rules, terms and conditions upon which students who reside in the county may be permitted to attend a high school other than the one in whose district they reside. Section 3.301, *supra*, provides for an alternative method of adopting such terms and conditions. First they are to be adopted by the interested school boards by agreement or contract, and in the event those boards fail to adopt such reasonable rules and terms, then the county superintendent of schools is authorized to do so. The attendance of the pupils in a high school within the county in a district other than the particular one in which they reside is made conditional upon the adoption of such reasonable rules and terms. The general scope or purpose of such terms is prescribed by the statute. The county superintendent is not authorized to increase or diminish the general school funds which are apportioned to the county. As a matter of equity he is merely authorized to apportion the funds already provided for by law so as to pay to the high school attended by the pupils the reasonable cost of teaching the pupils. This is certainly just and within the general scope of the act which specifically authorizes either the school boards or the administrative officer, the superintendent of schools, to adopt terms and regulations permitting pupils to attend high schools outside of the particular district in which they reside. It would be impracticable for the legislature to attempt to specifically prescribe all the terms and rules under which pupils may be permitted to attend high schools outside the particular district in which they reside since the equity of such terms may depend upon peculiar local conditions. It would therefore seem to be wise and proper that the adoption of such terms within the general scope prescribed by the statute be delegated to the interested school boards or to the superintendent of schools. ▪ It necessarily follows that such delegated discretionary authority should be exercised by the board or administrative officer in a fair and reasonable manner. The

terms which are adopted are presumed to be reasonable, in the absence of proof to the contrary. In upholding a statute authorizing a state board of architecture to adopt rules regulating the admission of persons to practice the profession of architecture in California, the Supreme Court said in that regard in *Ex parte McManus,* 151 Cal. 331 [90 Pac. 702, 704]:

" 'The authority conferred by the terms of the statute is to pass . . . rules which must be reasonably adapted for the purpose of determining the qualification of all applicants to practice the profession of architecture from an examination of the applicant on subjects pertaining to that profession. It was not necessary in the act to declare in terms that the rules and regulations which the board might adopt should be reasonable ones. . . . There is always implied in a grant of authority, such as here conferred, that it shall be exercised reasonably and fairly so as to effectuate the end contemplated.'

"It is a well-established rule of law that authority may be delegated by the legislature to administrative boards or officers to adopt reasonable rules and terms to carry out the general purpose for which a statute is enacted, even though the delegated power confers a discretion or the necessity of determining terms, qualifications or facts upon the board or officer within the scope of the legislative act. (6 R. C. L., p. 179, sec. 179; 5 Cal. Jur., p. 683, sec. 97; 1 Cooley's Const. Lim., p. 228; *School District No. 7, etc.,* v. *Hunnicutt,* (Okl.) 51 Fed. (2d) 528; *People* v. *Kuder,* 93 Cal. App. 42 [269 Pac. 198, 630]; *In re Halck,* 215 Cal. 500 [11 Pac. (2d) 389]; *Ex parte McManus,* 151 Cal. 331, 335 [90 Pac. 702]; *In re Weisberg,* 215 Cal. 624 [12 Pac. (2d) 446, 450].) In 1 Cooley's Const. Lim., 8th ed., p. 231, it is said in that regard:

" 'Boards and commissions now play an important part in the administration of our laws. The great social and industrial evolution of the past century, and the many demands made upon our legislatures by the increasing complexity of human activities, have made essential the creation of these administrative bodies and the delegation to them of certain powers. Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the

purpose of a statute and various governmental powers for the more efficient administration of the laws.'

"In the case of Weisberg, *supra,* in upholding a statute authorizing the state fire marshal to license certain establishments for sponging and pressing garments, the Supreme Court said with respect to these delegated powers:

" 'We find no merit in petitioner's claim that the act confers arbitrary and uncontrolled power upon the state fire marshal to determine the persons entitled to pursue and the conditions upon which they may conduct the regulated business. This contention is sufficiently answered by *Carter* v. *Stevens, supra,* 289–293 [211 Cal. 281, 295 Pac. 28], and *Gaylord* v. *City of Pasadena,* 175 Cal. 433, 436 [166 Pac. 348, 349]. As stated in the latter case, "it has become increasingly imperative that many quasilegislative and quasijudicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are entrusted to departments, boards, commissions and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For, as the Supreme Court of the United States declares, 'Indeed, it is not too much to say that a denial to Congress of the right under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be "to stop the wheels of government", and bring about confusion, if not paralysis, in the conduct of the public business.' (*Union Bridge Co.* v. *United States,* 204 U. S. 367 [51 L. Ed. 523, 24 Sup. Ct. 367].) " '

█ "The fact that certain pupils who reside in other school districts had attended the Ventura Union High School prior to the adoption of the terms and amount of tuition therefor by the Superintendent of Schools does not estop that officer from fixing the terms and conditions referred to in section 3.301 of the School Code. Such students were evidently attending that school unlawfully. The privilege of attending a high school other than the one which is situated in the same district in which the pupil resides is a

mere permissive right dependent upon the previous adoption of the terms and conditions therefor by agreement of the respective school boards, or upon their failure to do so, by the superintendent of schools. (Sec. 3.309, School Code.) The pupils acquired no vested right to attend the Ventura school by previously unlawfully doing so.

" 'What has been previously said is not intended to give the superintendent of schools authority to determine rules or terms or fix tuition retroactively so as to affect pupils in their past attendance upon the school, but upon the contrary these rules and the apportionment of funds are to apply only to pupils who attend the school after the rules and terms are adopted and the apportionment made.' "

The judgment is reversed and the court is directed to enter judgment in accordance with the foregoing opinion.