[Crim. No. 4499. In Bank. Nov. 18, 1943.]

In re CARLOS HERRERA et al., on Habeas Corpus.

David C. Marcus for Petitioners.

Robert W. Kenny, Attorney General, and Robert A. Neeb, Jr., Eugene M. Elson and Lewis Drucker, Deputies Attorney General, for Respondent.

TRAYNOR, J.—The petitioners were charged with the crime of assault with a deadly weapon. Petitioners Sandoval and Loya entered pleas of guilty of simple assault. Petitioner Herrera pleaded not guilty, and after trial was found guilty of the offense charged. Each of them was committed to the Youth Correction Authority. They have petitioned for a writ of habeas corpus, seeking their discharge from the custody of the Authority on the grounds that the statute authorizing their commitments is unconstitutional and that the commitments in any event were not in compliance therewith. (See *In re Bell,* 19 Cal.2d 488 [122 P.2d 22].)

The Youth Correction Authority Act (Stats. 1941, ch. 937, p. 2522), based on a model act drafted by the American Law Institute, adds section 1700 to 1783 to the Welfare and Institutions Code. (Section numbers cited hereinafter refer to sections of that code unless otherwise described.) The seriousness of the conditions that prompted its adoption are graphically set forth in the Introductory Explanation to the Model Act. (See, also, Report of Joint Legislative Fact Finding Committee on the Southern California Prison at Chino, p. 22; 9 Law and Contemporary Problems 579-759.)

The act creates a Youth Correction Authority of three members who are appointed by the governor to administer its provisions. Until January 1, 1946, no person may be committed to the Authority without its consent. (Sec. 1731.5, as amended, Stats. 1943, ch. 236.) With such consent, or irrespective of it after January 1, 1946, the court in which a

person is convicted of a public offense shall commit him to the Authority if he is under twenty-three years of age at the time of apprehension and is not sentenced to death, imprisonment for life, imprisonment for not more than ninety days or to the payment of a fine, and, after January 1, 1946, is not granted probation (secs. 1731.5, 1732, as amended, Stats. 1943, ch. 236), or is not proceeded against as a juvenile offender (sec. 1731). Nothing in the act can be deemed to interfere with or limit the jurisdiction of the juvenile court (sec. 1704), but the juvenile court may in its discretion commit persons subject to its jurisdiction to the Authority, which may in its discretion accept such commitments (sec. 1736).

By establishing the Authority as a central state agency to cooperate with hitherto uncoordinated public and private agencies in the reformation of socially dangerous persons, the act provides for a unified program of correctional treatment. To the extent that funds are available the Authority may "establish and operate a treatment and training service and such other services as are proper for the discharge of its duties; . . . employ and discharge all such persons as may be needed for the proper execution of its duties." (Sec. 1752.) It may also "make use of law enforcement, detention, probation, parole, medical, educational, correctional,. segregative and other facilities, institutions and agencies, whether public or private, within the State" (sec. 1753), but nothing in the act "shall be taken to give the Authority control over existing facilities, institutions or agencies; or to require them to serve the Authority inconsistently with their functions, or with the authority of their officers, or with the laws and regulations governing their activities; or to give the Authority power to make use of any private institution or agency without its consent; or to pay a private institution or agency for services which a public institution or agency is willing and able to perform." (Sec. 1754.) Public institutions and agencies are required to accept persons sent to them by the Authority as if they had been committed by a court of criminal jurisdiction. (Sec. 1755.) The Authority is also authorized, when necessary and when funds are available, to establish and operate places for detention, examination, study and confinement of persons committed to it, educational institutions, hospitals, and other correctional, segregative or supervisional agencies and facilities for performing its duties. (Sec. 1760.)

The Authority is vested with wide discretionary power in the treatment of a person committed to it. "When a person has been committed to the Authority it may (1) Permit him his liberty under supervision and upon such conditions as it believes conducive to law-abiding conduct; (2) Order his confinement under such conditions as it believes best designed for the protection of the public; (3) Order reconfinement or renewed release under supervision as often as conditions indicate to be desirable; (4) Revoke or modify any order except an order of discharge as often as conditions indicate to be desirable; (5) Discharge him from its control when it is satisfied that such discharge is consistent with the protection of the public." (Sec. 1766.) The act embodies the penal theory that the primary objective in the treatment of an offender is not punishment but rehabilitation. In the correction of the socially harmful tendencies of a person committed to it, the Authority may "(a) Require participation by him in vocational, physical, educational and corrective training and activities; (b) Require such conduct and modes of life as seem best adapted to fit him for return to full liberty without danger to the public welfare; (c) Make use of other methods of treatment conducive to the correction of the person and the prevention of future public offenses by him." (Sec. 1768.)

The Authority is entrusted with the determination of the fitness of an offender for discharge. "Except as otherwise provided in this chapter, the Authority shall keep under continued study a person in its control and shall retain him subject to the limitations of this chapter, under supervision and control so long as in its judgment such control is necessary for the protection of the public. (b) The Authority shall discharge such person as soon as in its opinion there is reasonable probability that he can be given full liberty without danger to the public." (Sec. 1765.) The act affords insurance against the continuance of control through neglect by requiring the Authority to investigate the lives and crimes of all persons committed to it and to renew its investigation at least once a year. If the Authority is remiss in this regard the offender may "petition the superior court of the county from which he was committed for an order of discharge, and the court shall discharge him unless the Authority satisfies the court of the need for further control." (Sec. 1764.)

The California Act omits the provision of the model act enabling the Authority on application to and order of the court to keep a person in its custody for successive periods, and prescribes definite time limits upon the retention of con-

trol by the Authority over persons committed to it. "Every person committed to the Authority by a juvenile court shall be discharged upon the expiration of a two-year period of control or when the person reaches his twenty-first birthday, whichever occurs later." (Sec. 1769.) "Every person convicted of a misdemeanor and committed to the Authority shall be discharged upon the expiration of a two-year period of control or when the person reaches his twenty-third birthday, whichever occurs later." (Sec. 1770.) "Every person convicted of a felony and committed to the Authority shall be discharged when such person reaches his twenty-fifth birthday, unless a petition is filed under Article 5 of this chapter. In the event such a petition is filed, the Authority shall retain control until the final disposition of the proceeding under Article 5." (Sec. 1771.) Article 5 provides for a hearing by the committing court upon petition by the Authority if the date of discharge occurs before the expiration of a period of control equal to the maximum term prescribed by law for which the person was convicted, and the Authority believes that his unrestrained freedom would be dangerous to the public. The court may discharge the person, admit him to probation, or commit him to the state prison for a period equal to the maximum term prescribed by law for the offense for which he was convicted, less the period during which he was under the control of the Authority.

█ There is no unconstitutional delegation of legislative or judicial power, as petitioners contend, in thus vesting power in the Authority to determine, within the limits prescribed, how long convicted persons shall be detained and how they shall be treated after commitment. The standards governing the Authority in determining the kind of treatment and release of such persons are well within constitutional requirements. (*Fillmore Union High School Dist.* v. *Cobb,* 5 Cal.2d 26, 33 [53 P.2d 349] ; *People* v. *Pryor,* 17 Cal. App.2d 147, 152 [61 P.2d 773].) The act is similar in this respect to the indeterminate sentence law, the validity of which has long been established. (*In re Lee,* 177 Cal. 690, 693 [171 P. 958] ; *People* v. *Ferlin,* 203 Cal. 587, 603 [265 P. 230] ; *People* v. *Ure,* 68 Cal.App. 545, 549 [229 P. 987] ; see Wharton, Criminal Law, (12th ed.) vol. 1, p. 63.)

Petitioners contend that because of the exclusions from the classification of those eligible for commitment to the Authority and because of the discretionary power of acceptance given the Authority, the act is discriminatory, uncer-

tain, ambiguous, indefinite, and arbitrary and therefore violates the Fourteenth Amendment to the United States Constitution and article I, sections 11, 14 and 21, and article IV, section 25 of the California Constitution. ██ This contention must be considered in the light of the established rule that the power of the Legislature to classify carries with it a wide discretion. "The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason." (*Martin* v. *Superior Court,* 194 Cal. 93, 101 [227 P. 762] ; *People* v. *Dawson,* 210 Cal. 366, 370 [292 P. 267] ; *County of San Bernardino* v. *Way,* 18 Cal.2d 647, 659 [117 P.2d 354] ; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 55 L.Ed. 369] ; *Radice* v. *People of New York,* 264 U.S. 292, 296 [44 S.Ct. 325, 68 L.Ed. 690] ; *New York Rapid Transit Corp.* v. *New York,* 303 U.S. 573, 578 [58 S.Ct. 721, 82 L.Ed. 1024] ; see 5 Cal.Jur. 832; 16 C.J.S. 998.)

██ Petitioners object to the discretion vested in the Authority up to January 1, 1946, in the acceptance of cases, contending that the Authority cannot accept any unless it accepts them all. Without such a provision, however, the Authority would have been overloaded at the outset and its effectiveness imperiled for lack of time to coordinate the necessary facilities for the treatment of those committed to it. The object of the Legislature was to enable the Authority to operate on a limited scale in the first stages so that it would have the opportunity to lay the foundations of an appropriate program in anticipation of the time when it would carry a full case load. In selecting its cases the Authority is guided by appropriate legislative standards, namely, the adequacy of available facilities and the likelihood of benefit to the person accepted for treatment. (Sec. 1731.5; see *Fillmore Union High School Dist.* v. *Cobb,* 5 Cal.2d 26, 33 [53 P.2d 349] ; *Carmichael* v. *Southern Coal Co.,* 301 U.S. 495, 511 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327].)

██ Petitioners contend that an unreasonable classification results from the provision that any offender who is less than 23 years of age at the time he is apprehended may be

committed to the Authority. There are convincing reasons, however, for such a classification. The great value in the treatment of youthful offenders lies in its timeliness in striking at the roots of recidivism. Reaching the offender during his formative years, it can be an impressive bulwark against the confirmed criminality that defies rehabilitation, for it is characteristic of youth to be responsive to good influence as it is susceptible to bad. Youth does not of course end abruptly to be superseded by maturity, and maturity comes more slowly to some than to others. It is a matter of practical necessity, however, and one of legislative discretion, to fix theoretical lines where there are no real ones, and there is no abuse of such discretion when the theoretical lines are not unreasonable. (*Martin* v. *Superior Court,* 194 Cal. 93, 105 [227 P. 762]; *Brown* v. *City of Los Angeles,* 183 Cal. 783, 789 [192 P. 716]; *Reynolds* v. *Barrett,* 12 Cal.2d 244, 249 [83 P.2d 29].) In the present case there is nothing unreasonable in fixing the age of 23 as the line for the treatment of youthful offenders by the Authority. ■ While section 25 of the Civil Code fixes 21 as the upper age limit of minors for general purposes, the Legislature is free to exercise its judgment in fixing the age limits of minority for particular purposes. "It cannot be questioned that the age of majority is a matter of legislative regulation and that the legislature may prescribe a longer period of minority for some purposes than for others." (*Gouanillou* v. *Industrial Acc. Com.,* 184 Cal. 418, 421 [193 P. 937]; see, also, *Ex Parte Williams,* 87 Cal. 78 [24 P. 602, 25 P. 248]; *Moore* v. *Williams,* 19 Cal.App. 600, 610 [127 P. 509]; *In re Willis,* 30 Cal.App. 188 [157 P. 819].)

■ There is no forbidden discrimination in the classification of those who are ineligible for commitment to the Authority even though they meet the age requirement. The Legislature may properly regard life imprisonment or the death penalty as necessary for the protection of the public in the case of grave offenses, just as it may regard imprisonment for not less than 90 days or the payment of a fine as adequate in the case of minor offenses.

■ Petitioners contend that the act is unreasonably discriminatory because a person committed to the Authority may remain in its custody for a period longer than the period of imprisonment that may be prescribed for a person convicted of the same offense but not committed to the Authority. This contention is answered by the many cases upholding similar provisions with respect to juvenile offenders. (*Boys'*

*and Girls' Aid Society* v. *Reis,* 71 Cal. 627 [12 P. 796]; *Ex Parte Liddell,* 93 Cal. 633, 640 [39 P. 251]; *Ex Parte Nichols,* 110 Cal. 651, 653 [43 P. 9]; *In re Daedler,* 194 Cal. 320 [228 P. 467]; *In re Sing,* 13 Cal.App. 736 [110 P. 693]; *People* v. *De Fehr,* 81 Cal.App. 562 [254 P. 588]; see *People* v. *Smith,* 218 Cal. 484, 488 [24 P.2d 166]; 3 A.L.R. 1614.)

■ Petitioners contend that their detention by the Authority is illegal because "no sentence or judgment" has ever been imposed upon them by the superior court, and they have been deprived of an appeal from their commitments to the Authority. On November 5, 1942, the court, having been advised by the Authority that it would accept the defendants, formally committed them thereto. The commitment in the Herrera case, typical of the form used in all the cases, after setting forth that defendant was convicted on September 4, 1942, of the crime of assault with a deadly weapon, a felony, and that he was under 23 years of age at the time of apprehension declares: "I do hereby certify that upon such conviction it is hereby ordered and adjudged by the Court on this 5th day of November, 1942, that for said offense the said Carlos Herrera be committed to the Youth Correction Authority of the State of California for the time prescribed by law. (signed) Clement D. Nye Judge of the Superior Court." This commitment is a judicial determination of the fact of defendant's conviction and a pronouncement of the sentence for the offense, namely, commitment to the Authority for the term prescribed by law, and is therefore the court's judgment and sentence of the convict within the meaning of title VIII, chapter I of the Penal Code, and is appealable. (Sec. 1739; see 8 Cal.Jur. 465; 69 A.L.R. 792; Freeman on Judgments, (5th ed.) 172.) To remove any doubts in this regard, the Legislature recently added section 1737.5 to the Welfare and Institutions Code providing that "A commitment to the Authority is a judgment within the meaning of Ch. I. Title 8 of Part 2 of the Penal Code, and is appealable." (Stats. 1943, ch. 898.)

The writ heretofore issued is discharged and petitioners are remanded.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.