[Civ. No. 12790. First Dist., Div. One. May 10, 1945.]

HERMAN ROBERT ENCINAS, JR., a Minor, etc. et al., Respondents, v. LOWTHIAN FREIGHT LINES, INCORPORATED (a Corporation) et al., Appellants.

Bronson, Bronson & McKinnon and Herbert Chamberlin for Appellants.

Nathan Goldwater and Leo Murcell for Respondents.

DOOLING, J. pro tem.—Respondents, as surviving widow and infant son of Herman Encinas, recovered a judgment after a jury trial for the wrongful death of Herman Encinas under section 377 of the Code of Civil Procedure.

The trial court instructed the jury as a matter of law that at the time of the death of Herman Encinas the plaintiff Bernice Encinas was his lawful wife and that she and their minor son were his lawful heirs. The sole attack of appellants is directed at this instruction.

In 1936 the decedent had married one Dorothy Encinas and, while they separated twelve days after marriage, they continued to be husband and wife until the entry of a final decree of divorce on December 30, 1940. In April, 1940, the plaintiff Bernice Encinas commenced to live with the decedent as his

wife, and they so lived together continuously until the decedent's death on December 5, 1941. Their son, the minor plaintiff, was born July 24, 1940.

On February 16, 1941, the decedent and the plaintiff Bernice appeared before the pastor of a Lutheran church and before such pastor a marriage ceremony was performed without a license in the form prescribed by section 79 of the Civil Code. At that time the plaintiff Bernice Encinas was over twenty years of age but under twenty-one, and the validity of the marriage is attacked on the ground that she was then a minor.

Civil Code, section 79 (approved February 6, 1878, Amendments to the Codes 1877-8, p. 75) reads as follows: "When unmarried persons, *not minors,* have been living together as man and wife, they may, without a license, be married by any clergyman. A certificate of such marriage must, by the clergyman, be made and delivered to the parties, and recorded upon the records of the church of which the clergyman is a representative. No other record need be made." (Italics added.)

The italicized words "not minors" in this code section expressly limit the class of persons authorized to be married without a license to those who have attained their majority, and since the amendment of section 25 of the Civil Code in 1927 (Stats. 1927, p. 1119) the age of majority of males and females alike has been fixed at twenty-one. The section as so amended, however, contains certain provisos, and upon the proper construction of the first of these provisos hinges the determination of this appeal. ■ Civil Code, section 25 as amended in 1927 reads: "Minors are all persons under twenty-one years of age; provided, that this section shall be subject to the provisions of the titles of this code on marriage and shall not be construed as repealing or limiting the provisions of section 204 of this code; provided, further, that upon the lawful marriage of any female of the age of eighteen years or over but under the age of twenty-one years, such female shall be deemed an adult person for the purpose of entering into any engagement or transaction respecting property or any contract, the same as if such person was over twenty-one years of age."

Civil Code, section 25 was again amended in 1931 (Stats. 1931, p. 1941) but only to amplify the last proviso thereof.

The primary question presented here involves the correct construction to be placed on the first proviso: "provided, that this section shall be subject to the provisions of the titles of this code on marriage. . . ." It is respondents' position that the purpose and effect of this proviso is to make a female over the age of eighteen years an adult for the purpose of contracting marriage. It is appellants' position that the proviso had no such effect.

In this regard respondents lean heavily on the provisions of section 56 of the Civil Code as those provisions read at the time of the amendment of section 25 of the Civil Code in 1927. Section 56 of the Civil Code then read (Stats. 1921, p. 333): "Any unmarried male of the age of twenty-one years or upwards and any unmarried female of the age of eighteen years or upwards, and not otherwise disqualified, is capable of consenting to and consummating marriage; provided, that any male under the age of twenty-one years and over the age of eighteen years and any female under the age of eighteen years and over the age of sixteen years with the consent in writing of the parents of the person under age, or one of such parents, or of his or her guardian, where such written consent is filed by the clerk issuing the marriage license, as provided in section sixty nine of the Civil Code, is capable of consenting to and consummating marriage."

Since prior to the amendment of section 25 of the Civil Code in 1927 the age of majority of males was twenty-one and that of females eighteen years, the practical effect of sections 56, 69 and 79 of the Civil Code, as they then read, was that any adult, male or female, was capable of contracting marriage freely and without the consent of parent or guardian, either with a license as required by section 69 or without one under section 79 where the parties had been living together as husband and wife; but no minor, male or female, was authorized to contract a marriage without a license being issued with the consent of a parent or guardian. Such was the situation when the Legislature amended section 25 to increase the age of majority of females to twenty-one.

The Legislature was then confronted with the problem whether to increase the age at which females could marry freely without a parent's or guardian's consent to twenty-one years or to leave it at eighteen as theretofore. In the face of

this problem they inserted in the amended section 25 the proviso ''that this section shall be subject to the provisions of the titles of this code on marriage. . . .''

The office of a proviso is to except from the operation of the statute something which might otherwise have been within its terms, or to qualify or restrain its generality. (*Johnson* v. *Board of Supervisors*, 208 Cal. 282, 285 [281 P. 57]; *Dupuy* v. *Board of Education*, 106 Cal.App. 533, 538 [289 P. 689]; 59 C.J. 1087; 50 Am.Jur. 457.) The office of the proviso here under consideration is patently to make clear that while the Legislature was increasing the age of majority of females to twenty-one years generally, it was not increasing the age at which females could contract marriage without a parent's or guardian's consent.

It is settled that the Legislature may fix different ages of majority for different purposes (*In re Herrera*, 23 Cal.2d 206, 213 [143 P.2d 345]; 14 Cal.Jur. 113) and it is our duty to construe the proviso under discussion so as to make it effective in carrying out the legislative intent. We can conceive of no other legislative purpose in adopting the proviso in question than to qualify the generality of the amendment increasing the age of majority of females to twenty-one by leaving the age of female majority at eighteen years for the purpose of contracting marriage.

Appellants contend, however, that to so hold is to confuse the age of majority with the age of consent to marriage. Not only were the two synonymous at the time of the amendment of section 25 of the Civil Code in 1927 as noticed above, but it had been the consistent legislative policy of our state from the first session of our Legislature in 1850 to permit adults, male and female, to consent to marriage freely and to permit minors to marry only with the consent of parents or guardian. During all of that period the age at which persons were emancipated from the control of parents and guardians for the purpose of consenting to marriage was the age of majority as fixed by law.

At the first session of the Legislature in 1850 ''An Act Regulating Marriages'' was adopted. (Stats. 1850, p. 424.) Section 7 of that act provided: ''No Judge, Justice of the Peace, Clergyman, Preacher of the Gospel, or other person, shall join in marriage any male under the age of twenty-one years, or female under the age of eighteen years, without the

consent of the parent or guardian, or other person under whose care and government such minor may be.''

This section was twice amended, in 1862 to require the procuring of a marriage license (Stats. 1862, p. 450) and in 1863 to authorize the marriage without a license of persons living together as husband and wife (Stats. 1863, p. 244), but the same age provisions were continued in force.

In 1872 upon the adoption of the codes, section 56 of the Civil Code read: ''Any unmarried male of the age of eighteen years or upwards, and any unmarried female of the age of fifteen years or upwards, and not otherwise disqualified, are capable of consenting to and consummating marriage.''

At the same time section 69 of the Civil Code governing the issuance of licenses to marry provided in subdivision 4 thereof that the license must show: ''If the male is under the age of twenty-one, or the female under the age of eighteen years, the consent of the father, mother, or guardian, if any such, is given. . . .''

The net effect of these two sections was to continue in force the previous law that any male or female over the age of majority could marry freely; to continue the requirement that minors must have the consent of parents or guardian, and to add a minimum age below which minors could not legally marry even with such consent.

Thus stood the law when in 1878 section 79 was added to the Civil Code. In providing in that section that unmarried persons *not minors* who had been living together as husband and wife might be married without a license the Legislature fitted a consistent piece into the existing pattern of the law. The law already provided in effect that unmarried persons *not minors* might be married with a license without the consent of any third party, but that no minor could be married without the consent of parent or guardian. Section 79 simply followed this existing pattern by limiting its provisions to persons not minors.

When section 56 was amended in 1921 to the form quoted earlier in this opinion it in no wise changed the law insofar as it fixed the age of majority of both males and females as the age at which persons could lawfully contract a marriage without obtaining a parent's or guardian's consent. It simply made the law clearer in that regard by expressly integrat-

ing section 56 with section 69. However, when the Legislature came to amend section 25 in 1927, they did find in section 56 a clear statement that "Any unmarried male of the age of twenty-one years or upwards and any unmarried female of the age of eighteen years or upwards . . . is capable of consenting to and consummating marriage . . ."; those ages were respectively the ages of majority of males and females as fixed by section 25 which they were proposing to amend; and they were faced with the question whether, in amending the age of majority of females from eighteen to twenty-one, they should also make twenty-one the age of female majority for the purpose of freely contracting marriage or leave the age of female majority at eighteen for that limited purpose. The legislative decision on that question was embodied in the proviso that the section "shall be subject to the provisions of the titles of this code on marriage. . . ."

■ This conclusion finds additional support in the proviso of section 25 making married women over eighteen years of age adult persons for the purpose of entering into contracts and transactions concerning property. The two are consistent with one another. It is logical to provide that if a female is an adult for the purpose of contracting marriage at eighteen she should be an adult for business purposes after having contracted a marriage. It seems not so logical to say that a female is not an adult for the purpose of contracting marriage at eighteen, but having contracted a marriage as a minor she thereupon immediately becomes an adult for business purposes.

■ Appellants also argue that to permit the application of section 79 to females over the age of eighteen years is to encourage immorality among minors and to interfere with parental control. We fail to see the force of this argument. Concededly, any unmarried female over the age of eighteen can contract a marriage with a license without parental consent. The plaintiff in this case, after living with the decedent as his wife, could have done so. We cannot find any unreasonable interference with parental control in extending to her the privilege of being married under section 79 without a license when she could have been married with a license even over her parents' objection. ■ In construing any statute the primary consideration is to determine the legislative purpose and intent. (23 Cal.Jur. 725-727; Code Civ. Proc.,

§ 1859.) ■ The obvious public policy behind section 79 of the Civil Code is to shield the parties and their children, if any, from the publicity of a marriage recorded in the ordinary manner, and thereby to encourage unmarried persons who have been living together as man and wife to legalize their relationship. It is promotive of this beneficent legislative purpose to extend the privileges of section 79 to all persons who are capable of contracting marriage without parental consent.

■ The fact that prior to the decedent's divorce the plaintiff was living with him is a false quantity. After the final decree was entered on December 30, 1940, and until the date of their marriage on February 16, 1941, the decedent and the plaintiff Bernice were unmarried persons living together as man and wife. That clearly satisfied the condition for marriage without a license set out in section 79.

Our conclusion that the plaintiff Bernice was not a minor for the purpose of consenting to marriage makes it unnecessary for us to consider the question whether the marriage of a minor under that section would be absolutely void or only voidable.

■ While the minor plaintiff was born before the marriage of his parents that marriage legitimated him. (Civ. Code, § 215.)

We find no error in the instruction attacked, and the judgment is accordingly affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 5, 1945. Edmonds, J., voted for a hearing.