SHAW, P. J.
 

 The defendants, a corporation and two natural persons, were convicted on charges of violating section 24242 of the Health and Safety Code, which is a part of the law for the formation of air pollution control districts, enacted in 1947 (Stats. 1947, chap. 632, pp. 1640-1651) as an addition to the Health and Safety Code, for the purpose of reducing air contamination, popularly known as “smog.” Defendants appeal from the judgments, and in support of the appeals contend that the prohibitory provisions of this law are unconstitutional and void for various reasons, that the evidence does not support the findings of guilt, and that the court erred in rulings on evidence. We have concluded that the control of “smog” is a proper subject of the police power, that the prohibitions of the statute herein mentioned violate none of the constitutional provisions referred to, that the evidence supports the finding of guilt, except as to the secretary of the corporation, defendant Olmstead, that no errors in ruling on evidence appear, and the judgments must be affirmed except as to Olmstead.
 

 The general purpose of the law above mentioned, as appears from sections 24198 and 24199 of the Health and Safety Code,
 
 *938
 
 is to reduce air contamination where it exists, “in order to safeguard life, health, property and the public welfare and to make possible the comfortable enjoyment of life and property." Section 24253 makes it a misdemeanor to violate any part of the article which contains section 24242, and the latter section provides that: “A person shall not discharge into the atmosphere from any single source of emission whatsoever any air contaminant for a period or periods aggregating more than three minutes in any one hour which is: (a) As dark or darker in shade as that designated as No. 2 on the Ringelmann Chart, as published by the United States Bureau of Mines, or (b) Of such opacity as to obscure any observer’s view to a degree equal to or greater than does smoke described in subsection (a) of this section."
 

 This provision is attacked on the ground that it sets forth no ascertainable standard of guilt and is fatally uncertain, by reason of its reference to the Ringelmann Chart for the description of the forbidden air contaminant. The complaint here specified smoke as the air contaminant discharged, so we limit our further discussion to smoke.
 

 The term “air contaminant" is defined by section 24208 to include smoke and a variety of other specified emanations. All that is needed further for certainty in section 24242, as it applies here, is some means of determining the density or opacity of smoke that is forbidden. “That is certain which can be made certain” (Civ. Code, § 3538). This rule is as applicable to statutes as to other expressions of ideas. A statute may refer to and adopt, for an expression of the legislative intent, a statute, or rules or regulations of another state or of the United States
 
 (In re Burke
 
 (1923), 190 Cal. 326, 328 [212 P. 193];
 
 Brock
 
 v.
 
 Superior Court
 
 (1937), 9 Cal.2d 291, 297 [71 P.2d 209, 114 A.L.R. 127];
 
 In re Kinney
 
 (1921), 53 Cal.App. 792, 794 [200 P.966];
 
 Greene
 
 v.
 
 Lakeport
 
 (1925), 74 Cal.App. 1, 9 [239 P. 702].) In
 
 Arwine
 
 v.
 
 Board of Medical Examiners
 
 (1907), 151 Cal. 499, 503 [91 P. 319], and
 
 Ex parte Gerino
 
 (1904), 143 Cal. 412, 419 [77 P. 166, 66 L.R.A. 249], the court upheld a provision of statute adopting as the standard of efficiency to which medical schools should conform the standard prescribed by an association of such schools—even an after adopted standard.
 

 We think it is equally permissible for a statute to refer to and adopt, for description of a prohibited act, an official publication of any United States board or bureau established by law, such as the United States Bureau of Mines.
 
 *939
 
 The publications of that bureau are as readily available for examination by those seeking information on the effect of the statute as were the statutes and regulations, references to which were approved in the cases just cited. It is no more necessary here than it was in those eases that provision be made for free or other public distribution of the matter referred to. The courts take judicial notice of the official acts of the Bureau of Mines (Code Civ. Proc., § 1875, subd. 3; see also
 
 Livermore
 
 v.
 
 Beal
 
 (1937), 18 Cal.App.2d 535, 540-542 [64 P.2d 987];
 
 Williams
 
 v.
 
 San Francisco
 
 (1938), 24 Cal. App.2d 630, 633 [76 P.2d 182];
 
 Arnold
 
 v.
 
 Universal Oil Land Co.
 
 (1941), 45 Cal.App.2d 522, 529 [114 P.2d 408]), and private citizens who are concerned with them are also charged with notice of them.
 
 (Arnold
 
 v.
 
 Universal Oil Land Co., supra,
 
 at p. 530.)
 

 While, as already stated, the courts take notice of the Ringelmann Chart, our notice in this case is fortified by a copy which was introduced in evidence and is in the record. It is a plain white piece of paper divided into four sections, numbered from 1 to 4 and each about
 
 5%
 
 x
 
 8%
 
 inches in size. On each of these sections is printed a series of intersecting heavy black lines of uniform width for each section, with the lines growing progressively wider from section 1 to section 4, until on section 4 the black covers much more than half of the surface. This chart refers to Bureau of Mines Information Circular No. 6888, a copy of which is also in the record. From the chart and this circular, it appears that the chart is to be posted at a distance of 50 feet from the observer. When so posted the black lines and the white spaces merge into each other, by a process of optical illusion, so as to present the appearance of a series of gray rectangles of different color densities, No. 4 being the densest. Estimates of the density of smoke may be made by glancing from this chart so displayed to smoke, and picking out the section on the chart which most nearly resembles the smoke. This mode of measuring the density of smoke has been in use, it appears, for over 50 years. This affords a reasonably certain mode of determining and stating the density and opacity of smoke, and we think that the statute adopting it is not lacking in certainty.
 

 It is also urged that the statute is unreasonable and discriminatory because under it one who discharges an air contaminant only slightly below the prescribed limit of color or opacity is exempt from the prohibition even though if he continues his operation long enough he will discharge more
 
 *940
 
 contaminant into the air than one who continues for only a short time beyond the 3-minute minimum. This is only another way of saying that the line between permission and prohibition is drawn in the wrong place or that no such line can be drawn. But the drawing of such a line is very largely a matter of legislative discretion, the exercise of which will not be reversed by the courts unless abused. As the court said, upholding a statute against a similar attack, in
 
 Ferrante
 
 v.
 
 Fish & Game Comm.
 
 (1946) 29 Cal.2d 365, 374 [175 P.2d 222], “the line must be drawn somewhere or there can be no classification and the courts have recognized that if the classification is reasonable in its over-all operation it is not to be stricken down because of its application to a particular case that may lie just inside its borders.” Upholding a city ordinance establishing a district in which undertaking establishments were permitted and prohibiting them elsewhere, the court said, in
 
 Brown
 
 v.
 
 City of Los Angeles
 
 (1920), 183 Cal. 783, 789 [192 P. 716]: “The mere fact that outside of the permissive district there was other property similar in nature and character would not justify the court upon ascertaining that fact to substitute its judgment for the legislative judgment. The boundary line of a district must always be more or less arbitrary, for the property on one side of the line cannot, in the nature of things, be very different from that immediately on the other side of that line.” (See, also,
 
 In re Berrera
 
 (1943), 23 Cal.2d 206, 213 [143 P.2d 345].) The principles declared in these cases are applicable here and impel us to uphold the statute against this objection.
 

 Further objection to the statute is based on section 24251, Health and Safety Code, which provides that section 24242 does not apply to certain agricultural operations or the use of orchard heaters not producing more than a specified amount of smoke. It is contended that this provision prevents the law from having a uniform operation, makes it a special law and' constitutes an arbitrary discrimination, in violation of several constitutional provisions referred to. The decisions on these and cognate questions are well nigh innumerable, and we do not find it necessary to review them here. We have, however, considered those cited by defendants, and others, and conclude that the statute is not vulnerable to this attack. The effect of section 24251 is that the prohibitions of section 24242 do not extend to the described agricultural operations, or the specified orchard heating. But the Legislature rQay make a reasonable classification, founded upon some natural,
 
 *941
 
 constitutional or intrinsic distinction
 
 (Lelande
 
 v.
 
 Lowery
 
 (1945), 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R 1109];
 
 People
 
 v.
 
 Western Fruit Growers
 
 (1943), 22 Cal.2d 494, 506 140 P.2d 13];
 
 In re Herrera, supra
 
 (1943), 23 Cal.2d 206, 212;
 
 Takahashi
 
 v.
 
 Fish & Game Comm.
 
 (1947), 30 Cal.2d 719, 727 [185 P.2d 805].) The Legislature is not bound, in order to make its action valid, to extend its regulation to all cases which it might possibly reach, but may confine its restrictions to those classes of cases where the need is deemed to be clearest.
 
 (Lelande
 
 v.
 
 Lowery, supra; Powers Farms, Inc.
 
 v.
 
 Consolidated Irrig. Dist.
 
 (1941), 19 Cal.2d 123, 131 [119 P.2d 717];
 
 In re Girard
 
 (1921), 186 Cal. 718, 723 [200 P. 593].) There is a strong presumption in favor of the validity of a legislative classification.
 
 (County of Los Angeles
 
 v.
 
 Southern Cal. Tel. Co.
 
 (1948), 32 Cal.2d 378, 389, 392 [196 P.2d 773];
 
 Takahashi v. Fish & Game Comm, supra,
 
 at pp. 727-728;
 
 In re Herrera, supra.)
 
 “When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification.”
 
 (People
 
 v.
 
 Western Fruit Growers, supra,
 
 at p. 507; to same effect,
 
 Leland
 
 v.
 
 Lowery, supra.)
 

 Agricultural operations are usually carried on in rural districts, where there is not such a concentration of many establishments in small areas as is often found in urban or suburban areas, and do not usually result in excessive production of smoke. Orchard heating in California is done for only a few days in the course of a year. The Legislature may have regarded these facts of common knowledge as affording a reasonable basis for the exclusions made in section 24251. It may also have investigated and discovered other facts, not negatived by anything before us, tending to show the comparative harmlessness of the operations excluded and the difficulty which agricultural operators would have in minimizing such harm as their operations bring about. In view of the presumption in favor of the validity of its action, as declared in the cases above cited, we are not justified in upsetting its decision.
 

 Three witnesses testified regarding the smoke discharged from defendants’ place of business on the occasions specified in the complaint, and its degree of density and opacity as compared with the Bingelmann Chart. Defendants complain that' these witnesses showed no qualifications sufficient to
 
 *942
 
 enable them to give expert testimony on this subject, and that their observations were not sufficient because they had no Ringlemann Charts with them when those observations were made. Assuming that the comparative density and opacity of the smoke is a matter for expert testimony only, we see no error in the rulings of the court admitting in evidence and refusing to strike the testimony of these witnesses. The air pollution control district established under the statute in Los Angeles County maintained a school where its inspectors were trained to “read smoke,” as they called it, by the aid of the Ringelmann Chart, and after they became experienced they no longer needed to look at the chart. The witnesses just mentioned attended this school before making the observations to which they testified, and by that and other experience acquired the ability to estimate the opacity and color of smoke such as they testified to with reference to the Ringelmann Chart without actually using the chart. Their testimony was sufficient in these respects to justify the ruling of the court that they were competent to testify as experts. (See
 
 Hutter
 
 v.
 
 Hommel
 
 (1931), 213 Cal. 677, 681 [3 P.2d 554];
 
 Darling
 
 v.
 
 Pacific Elec. Ry. Co.
 
 (1925), 197 Cal. 702, 714 [242 P. 703].) If there was any doubt as to the adequacy of their training, it was not enough to require the exclusion of their testimony, but would go only to its weight and credibility, which are not matters for consideration here. (See
 
 Cloud
 
 v.
 
 Market St. Ry. Co.
 
 (1946), 74 Cal.App.2d 92, 100 [168 P.2d 191].)
 

 As to defendant Hochman and the defendant corporation, we are satisfied that the evidence is sufficient to support the convictions. We come to a different conclusion regarding defendant Olmstead. The place where the smoke was discharged was operated by the defendant corporation and the smoke was discharged in the course of and as a part of its operations in burning automobile bodies, of which it appears defendent Hochman was in charge as an officer and manager. But as to defendent Olmstead, it appears only that he was secretary of the corporation, and that he had a conversation with an inspector of the air pollution control district and wrote him a letter showing that he had knowledge of these burning operations and that the corporation desired and expected to stop these operations soon. There is nothing to show that he had any control over these operations. The secretary of a corporation, merely as such, is a ministerial officer, without authority to transact the business
 
 *943
 
 of the corporation upon his independent volition and judgment. (6A Cal.Jnr. 1162; and see
 
 Walsh
 
 v.
 
 American Trust Co.
 
 (1935), 7 Cal.App.2d 654, 659 [47 P.2d 323].) “An officer of a corporation is not criminally answerable for any act of a corporation in which he is not personally a participant.”
 
 (People
 
 v.
 
 Campbell
 
 (1930), 110 Cal.App.Supp. 783, 789 [291 P. 161];
 
 Otis
 
 v.
 
 Superior Court
 
 (1905), 148 Cal. 129, 131 [82 P. 853]; to same effect,
 
 People
 
 v.
 
 Doble
 
 (1928), 203 Cal. 510, 517 [265 P.184].)
 

 The judgments against defendants International Steel Corporation and Hochman are affirmed. The judgments against the defendant Olmstead are reversed and the cause is remanded to the municipal court for a new trial as to him.
 

 Bishop, J., and Stephens, J., concurred.