ULYSSES VERNON BEASLEY, JAMES A. KIGER, EMIDIO J. BASSETTI, AND JOE W. JONES v. FOOD FAIR OF N. C., INC., AND RAY F. MESSICK

No. 7221SC457

(Filed 2 August 1972)

1. **Master and Servant § 10— discharge for union membership — supervisors — jurisdiction of State court**

    Where meat market managers who are union members have been classified as supervisors by the National Labor Relations Board, the State court has jurisdiction of an action brought by such meat market managers to recover damages for their discharge because of membership in the union. G.S. 95-81; G.S. 95-83.

2. **Master and Servant § 10— discharge for union membership — right-to-work statute — applicability to supervisors**

    Supervisors come within the purview of G.S. 95-83 giving the right to recover damages to any "person" whose continuation of employment has been denied because of union membership.

APPEAL by plaintiffs Beasley, Bassetti and Jones from *Gambill, Judge,* 28 February 1972 Session, Superior Court, FORSYTH County.

Plaintiffs jointly brought an action asking for $500,000 actual damages and $1,000,000 punitive damages, without separation of damages as to each plaintiff. They alleged that they were employed by defendant Food Fair as meat market managers. After a campaign and election, Local 525 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, was, on 24 June 1971, certified as collective bargaining representative for all of defendant Food Fair's meat market employees. Plaintiffs joined this labor organization in April and May 1971, and defendants had knowledge of this prior to 24 June 1971. On 25 and 27 June 1971, defendant Messick, acting individually and as agent for defendant Food Fair, discharged plaintiffs because of their membership in the union. As a result of this, plaintiffs suffered embarrassment and humiliation in their community, lost all means of income, and have been unable to find other employment. The plaintiffs further alleged that the conduct was "willful, reckless, malicious, and without the slightest regard for the rights guaranteed the Plaintiffs by the General Statutes of North Carolina."

Defendants filed motion to dismiss and plea in abatement. Grounds for motion to dismiss were that the complaint failed to state a claim upon which relief could be granted because the court lacked jurisdiction and because the complaint alleges violations as to all four plaintiffs but alleges damages collectively and fails to define or allege that damages were suffered by each plaintiff. By way of plea in abatement defendants alleged that a prior action involving the same parties and same subject matter was pending before the National Labor Relations Board. In the alternative, defendants moved to dismiss as to punitive damages on the ground punitive damages are not recoverable in this action as a matter of law. The court considered the motions to dismiss and for judgment on the pleadings as a motion for summary judgment and allowed it, dismissing the action with prejudice. Plaintiffs Beasley, Bassetti, and Jones appealed.

*Eubanks and Sparrow, by Larry L. Eubanks, for plaintiff appellants.*

*McCaul, Grigsby and Pearsall, by Robert C. Moss, and Hudson, Petree, Stockton, Stockton and Robinson, by R. M. Stockton, Jr., and James H. Kelly, Jr., for defendant appellees.*

MORRIS, Judge.

It appears from the affidavit and copy of the National Labor Relations Board's order filed with defendants' motion that the plaintiffs, who are meat market managers, are classified as supervisors under the definition contained in the Labor Management Relations Act. This is conceded by plaintiffs. It also appears by stipulation that plaintiffs' appeal to the General Counsel of the National Labor Relations Board from a denial of their claim under the Act was denied. The pertinent portions of the letter of denial follow: "Your appeal in the above matter has been duly considered. The appeal is denied. The four alleged discriminatees involved herein were supervisors within the meaning of Section 2 (11) of the Act and hence were not entitled, in the circumstances herein, to the protection of the Act."

Statutes dealing with labor organizations are contained in Article 10 of Chapter 95 of the General Statutes, and became effective 18 March 1947. Section 95-78 declares the policy:

> "The right to live includes the right to work. The exercise of the right to work must be protected and maintained free from undue restraints and coercion. It is hereby declared to be the public policy of North Carolina that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization or association."

G.S. 95-83 provides:

> "Any person who may be denied employment or be deprived of continuation of his employment in violation of §§ 95-80, 95-81 and 95-82 or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation, or association acting in concert with him by appropriate action in the courts of this State such damages as he may have sustained by reason of such denial or deprivation of employment."

Plaintiffs contend that defendants have violated Section 95-81:

> "No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."

Defendants, however, contend that plaintiffs are supervisors, a fact which is conceded by plaintiffs, and that under the provisions of the Labor Management Relations Act they are specifically excluded as employees entitled to protection of the Act; that the National Labor Relations Board took jurisdiction, and denied their claim because they are not afforded the protection of the Act; and that the Taft-Hartley Act, under its provisions, has excluded and preempted State jurisdiction.

This is a case of first impression in this State. Counsel have cited no authority directly in point, nor have we found any case on "all fours." Determination requires that we first consider certain sections of the Taft-Hartley Act (Labor Management Relations Act) hereinafter referred to as the Act. Reference to section numbers shall be to those adopted in United States Code Annotated, Title 29, unless otherwise indicated. Definitions are found in Section 152. Those pertinent to this appeal are:

> "(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include . . . any individual employed as a supervisor . . ."

> "(8) The term 'unfair labor practice' means any unfair labor practice listed in section 158 of this title."

> "(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or

clerical nature, but requires the use of independent judgment."

Section 157 gives to "employees" the right "to form, join, or assist labor organizations." Section 158(a) sets out certain actions which shall be deemed unfair labor practices on the part of an employer. Among those are (1) interference with rights guaranteed to employees in Section 157 and (3) discrimination with respect to hiring or tenure of employment by reason of an employee's membership in any labor organization.

In defining "supervisors," Congress had in mind supervisory personnel traditionally regarded as a part of management and to place into the employer category those who act for management in formulating and executing its labor policies. *International Union of United Brewery, etc. v. N.L.R.B.*, 298 F. 2d 297, (D.C. Cir. 1961), cert. denied 369 U.S. 843, 7 L.Ed. 2d 847, 82 S.Ct. 875 (1962). In excluding supervisors from the rights and protections afforded employees, the purpose was to assure to employers their right to select their supervisors and to procure the loyalty and efficiency of their supervisors. *National Labor Rel. Bd. v. Retail Clerks Inter. Ass'n.*, 211 F. 2d 759 (9th Cir. 1954), cert. denied 348 U.S. 839, 99 L.Ed. 662, 75 S.Ct. 47 (1954). As was said in *National Labor Relations Bd. v. Edward G. Budd Mfg. Co.*, 169 F. 2d 571, 579 (6th Cir. 1948), cert. denied 335 U.S. 908, 93 L.Ed. 441, 69 S.Ct. 411 (1949): "We believe it is clear that Congress intended by the enactment of Labor Management Relations Act that employers be free in the future to discharge supervisors for joining a union, and to interfere with their union activities."

Erosion of this purpose appeared with the 1947 amendment (effective 23 June 1947, after the enactment and effective date of North Carolina's Right-to-Work Act), allowing supervisors to join a labor organization. Section 164(a) provides:

> "Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

The question of federal preemption in the labor relations field has frequently been before the courts since the enactment of Taft-Hartley. As was said in *Garner v. Teamsters Union,* 346 U.S. 485, 488, 98 L.Ed. 228, 74 S.Ct. 161 (1953), "[t]he National Labor Management Relations Act . . . leaves much to the states, though Congress has refrained from telling us how much."

"When a union attempts to organize supervisors, or when supervisors elect to become members of a union, a problem of federal preemption does arise." 4 Jenkins, Labor Law, § 21.9, The Federal Preemption Doctrine, p. 103. In *San Diego Unions v. Garmon,* 359 U.S. 236, 3 L.Ed. 2d 775, 79 S.Ct. 773 (1959), Mr. Justice Frankfurter, speaking for the majority, laid down certain guidelines when he said:

"If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7 [29 U.S.C.A. 157], or prohibited by § 8 [29 U.S.C.A. 158], then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States." 359 U.S., at p. 245.

In *Hanna Mining v. Marine Engineers,* 382 U.S. 181, 15 L.Ed. 2d 254, 86 S.Ct. 327 (1965), in an opinion by Mr. Justice Harlan, expressing the view of eight members of the Court, it was held that under the circumstances of that case, the federal act did not preempt the state's jurisdiction. Plaintiffs, employers, declined to negotiate with a union representing the marine engineers until it was established that the union represented a majority of the engineers whereupon the union picketed plaintiffs' ships. Employers petitioned that a representation election among its engineers be held. The petition was dismissed by the National Labor Relations Board on the ground that the engineers were "supervisors" under the Act, and excluded from the definition of employees. The employers' charge alleging a violation of Section 8 [29 U.S.C.A. § 158] of the Act was dismissed on the ground that the union's conduct fell outside the provisions of the Act because it sought to represent "supervisors" rather than "employees." Plaintiffs then brought suit in Wisconsin state court seeking injunctive relief. The state court dismissed for lack of jurisdiction. The Supreme Court of

Beasley v. Food Fair

Wisconsin affirmed on the ground that the picketing, while illegal under Wisconsin law, arguably violated Sections 8(b)(4)(B) and 8(b)(7) of the Act [29 U.S.C.A. § 158(b) (4)(B) and 29 U.S.C.A. § 158(b)(7)] and so fell within the exclusive jurisdiction of the National Labor Relations Board. In reversing, the Supreme Court said:

> "The ground rules for preemption in labor law, emerging from our Garmon decision, should first be briefly summarized: in general, a State may not regulate conduct arguably 'protected by § 7, or prohibited by § 8' of the National Labor Relations Act, see 359 U.S., at 244-246, and the legislative purpose may further dictate that certain activity 'neither protected nor prohibited' be deemed privileged against state regulation, cf. 359 U.S., at 245.
>
> For the reasons that follow, we believe the Board's decision that Hanna engineers are supervisors removes from this case most of the opportunities for preemption." 382 U.S., at pp. 187-188.

The Court went on to say that exclusion of supervisors from the definition of employees had the obvious result that many provisions of the Act employing that pivotal term would cease to operate where supervisors were the focus of concern. There cannot be protection by Section 157 nor do supervisors come within the prohibitions of Section 158. The defendants argued that Section 164(a) ousted both state and federal authority and signified "a laissez faire toward supervisors." The Court said the position had no merit since "the Committee reports reveal that Congress' propelling intention was to relieve employers from any compulsion under the Act and under state law to countenance or bargain with any union of supervisory employees. Whether the legislators fully realized that their method of achieving this result incidentally freed supervisors' unions from certain limitations under the newly enacted § 8(b) [29 U.S.C.A. § 158(b)] is not wholly clear, but certainly Congress made no considered decision generally to exclude state limitations on supervisory organizing." 382 U.S., at pp. 189-190.

[1] Applying what we deem to be the holding of *Hanna*, i.e., that a state does have jurisdiction over activities of supervisors because the activities of supervisors could not be arguably either prohibited or protected under the Act, we reach the conclusion that in the case before us where, as in *Hanna,* the union

members involved have been classified by the National Labor Relations Board as supervisors, the State court has jurisdiction. Plaintiffs as supervisors are not arguably either protected by Section 157 or prohibited by Section 158. While *Willard v. Huffman,* 250 N.C. 396, 109 S.E. 2d 233 (1959), cert. denied 361 U.S. 893, 4 L.Ed. 2d 150, 80 S.Ct. 195 (1959), did not deal with supervisors, we think this position is within the rationale of that holding.

[2] We next reach the question of whether plaintiffs come within the purview of G.S. 95-83 giving the right to recover damages to any "person" whose continuation of employment has been denied because of union membership. Defendants strenuously insist that the purpose of North Carolina's Right-to-Work Statutes is the same as the Labor Management Relations Act—to protect rank and file employees from unfair labor practices and provide them with the right, if they choose, to negotiate as one on an equal basis with management. They contend that to interpret the statute as including supervisors would result in the division of management into owners and supervisors, seriously weaken the position of management, and create a severe imbalance between labor and management. While we are inclined to agree, we are bound by the rules of statutory construction. "If the language of a statute is clear and unambiguous, judicial construction is not necessary. Its plain and definite meaning controls. (Citations omitted.) But if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent. (Citations omitted.)" *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 479, 164 S.E. 2d 2 (1968). The meaning of the word "person" certainly is clear and unambiguous and leaves no room for argument. It is defined as "an individual human being." Webster's Third New International Dictionary (1968). The term obviously includes supervisors as well as employers. We recognize the fact that this statute was enacted just a few months prior to the effective date of 29 U.S.C.A. 164(a). However, the legislature did not see fit to use the word "employee," specifically excluding supervisors from its meaning, as did the legislatures of some states in enacting right-to-work statutes. To give the plain language of the statute, by interpretation, a meaning it does not have would result in amending the statute. This is the prerogative of the legislature.

For the reasons stated herein, the judgment of the trial tribunal must be reversed. The court did not rule on defendants' motion to dismiss the prayer for relief as to punitive damages nor for misjoinder of claims. These questions, therefore, are not before us.

Reversed.

Judges VAUGHN and GRAHAM concur.