[Civ. No. 33305. First Dist., Div. Three. Mar. 25, 1975.]

ORGANIZATION OF DEPUTY SHERIFFS OF SAN MATEO COUNTY, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SAN MATEO et al., Defendants and Appellants.

## COUNSEL

Keith C. Sorenson, District Attorney, James W. Foley and Michael J. McLaughlin, Deputy District Attorneys, for Defendants and Appellants.

Carroll, Burdick & McDonough, Christopher D. Burdick and Ronald Yank for Plaintiffs and Appellants.

## OPINION

GOOD, J.*—The Organization of Deputy Sheriffs, ODS *post*, was formed in 1970 as an organization whose membership included civil service job classifications of sheriff's deputies, sergeants, lieutenants and captains and investigators and chief inspector in the district attorney's office. It was composed entirely of peace officers. Its purpose, in addition to promoting effectiveness of law enforcement generally, was to represent sheriff's employees of rank below captain and district attorney's investigators in labor negotiations with the County of San Mateo. Captains were thus members of ODS but not represented by it.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

After the passage of the Meyers-Milias-Brown Act (MMB, *post;* also, code references *post* are to Gov. Code, §§ 3500 to 3510 unless otherwise stated), appellant county in August 1970, as authorized by section 3507,[1] promulgated Resolution 28068 to govern employer-employee relations therein. The resolution contained rules of procedure for the establishment and modification of representation units for various classifications of employment. Pursuant thereto, ODS petitioned for its recognition as the representation unit for sheriff's employees below captain and for inspectors in the district attorney's office, all of whom were peace officers as defined by Penal Code sections 830.1 and 830.3, subdivision (b). The petition was granted and a Law Enforcement Unit was established with ODS recognized as the organization representing these employees. The sheriff's captains, chief civil deputy and the district attorney's chief investigator were designated as management employees and placed in the All County Management Unit which included managerial and confidential employees in departments having nothing to do with law enforcement and was thus not composed entirely of peace officers. This unit was represented by the County Employees Association, a county-wide employee's organization.

Less than two years thereafter, ODS, upon the initiative of respondent Captain Elvander and other peace officers who were in the All County Management Unit, petitioned the civil service commission to create a new Law Enforcement Management Unit to be composed entirely of peace officers and to thus remove them from representation by the All County Employees Association. They asked that ODS be recognized as their representation organization. The petition was granted but the

---

[1] "A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of an employee organization or organizations for the administration of employer-employee relations under this chapter (commencing with Section 3500). Such rules and regulations may include provisions for (a) verifying that an organization does in fact represent employees of the public agency (b) verifying the official status of employee organization officers and representatives (c) recognition of employee organizations (d) exclusive recognition of employee organizations formally recognized pursuant to a vote of employees of the agency or an appropriate unit thereof, subject to the right of an employee to represent himself as provided in Section 3502 (e) additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment (f) access of employee organization officers and representatives to work locations (g) use of official bulletin boards and other means of communication by employee organizations (h) furnishing nonconfidential information pertaining to employment relations to employee organizations (i) such other matters as are necessary to carry out the purposes of this chapter. Exclusive recognition of employee organizations formally recognized as majority representatives pursuant to a vote of the employees may be revoked by a majority vote of the employees only after a period of not less than 12 months following the date of such recognition. No public agency shall unreasonably withhold recognition of employee organizations."

commission took it a step further and determined that sheriff's lieutenants had managerial duties and they were thus included in the Law Enforcement Management Unit. Before an election could be held to designate an employee's organization to represent them—a step contemplated by section 3507, subdivision (d), where regulations for such elections existed—ODS, Captain Elvander and Lieutenant Hoover (who had served on ODS' negotiating team for two years), individually and on behalf of the officers placed in the new unit, filed their petition in the superior court seeking mandate and injunction to prevent the creation of the new unit or the inclusion therein of said upper echelon employees. They sought to compel the county to continue lieutenants in the (basic) Law Enforcement Unit and to add thereto the sheriff's captains, his chief deputy and the district attorney's chief inspector.

The trial court found that the creation of two law enforcement units violated the rights of peace officers under section 3508 which in relevant part provides: ". . . the governing body may not prohibit the right of its employees who are full-time 'peace officers' . . . to join or participate in employee organizations which are composed solely of such peace officers, which concern themselves solely and exclusively with the wages, hours, working conditions, welfare programs, and advancement of the academic and vocational training in furtherance of the police profession, and which are not subordinate to any other organization. [¶] The right of employees to form, join and participate in the activities of employee organizations shall not be restricted by a public agency on any grounds other than those set forth in this section."

The mandatory and injunctive relief prayed for was granted, including a mandate that ODS be recognized as the representative for the basic law enforcement unit which, as reconstituted according to the mandate, would include both upper and lower echelons of peace officers. The court made findings and conclusions which recited the resolution's definition of "management employees"[2] and found that the commission had "authority to find that lieutenants are management employees;" that its finding to that effect was supported by evidence both before the commission and at trial; that lieutenants and captains were management employees and that the "County's prohibition restricting management and confidential employee's activities, expressed in section 17 [of said

---

[2]This definition is: "Management employee—Any employee having significant responsibility for formulating or administering County policies and programs and having responsibility for directing the work of subordinates through lower-level supervision."

resolution] is valid."[3] We find nothing in the judgment itself that reduces these latter findings and conclusions to judgment either by way of declaration or order.

The County and Civil Service Commission appealed. ODS and Captain Elvander and Lieutenant Hoover cross-appealed "from that portion of the judgment . . . [which held] . . . that lieutenants in the Sheriff's Department . . . were and are 'management employees' as that term is defined" in said resolution. Although the point is not properly before us on the cross-appeal because the judgment is completely silent concerning it, the point must be discussed because for reasons explained below we have concluded that the judgment must be reversed as to that portion which prohibits appellant from designating any management and confidential employees in the sheriff's office as a separate representation unit.

MMB furnishes a sketchy and frequently vague framework of employer-employee relations for California's local governmental agencies. It has been criticized for lack of specificity, "confusing lack of clarity" and internal inconsistencies in many important areas. (Grodin, *Public Employee Bargaining in California* (1972) 23 Hastings L.J. 719, 738-739, 760; Schneider *An Analysis of the Meyers-Milias-Brown Act of 1968* 1 Civ. Pub. Employment Relations (CPER) 1 and *Unit Determination, Experiments in California Local Government,* 3 CPER 1.) The dispute herein arises out of the kind of vagueness and inconsistencies described by Dr. Grodin, *supra.* ▮ The basic issue presented is whether MMB's grant of authority for a public agency to designate some employees in various departments as management or confidential employees and restrict them from representing any employee organization which represents nonmanagement or nonconfidential employees (§ 3507.5)[4] was rendered inapplicable to the law enforcement branches of

---

[3]The restrictions were summarized in the findings: "At all times pertinent section 17 of the employer-employee relations policy of the County of San Mateo provided that management or confidential employees who are members of an employee organization that includes as members employees who are not management or confidential employees shall not (a) serve on committees which deal with matters within the scope of representation or (b) serve as representatives of such employer organization before county management." (Compare, § 3507.5.)

[4]Section 3507.5 reads: "In addition to those rules and regulations a public agency may adopt pursuant to and in the same manner as in Section 3507, any such agency may adopt reasonable rules and regulations providing for designation of the management and confidential employees of the public agency and restricting such employees from representing any employee organization, which represents other employees of the public agency, on matters within the scope of representation. Except as specifically provided

local governments by the provisions of section 3508 heretofore quoted and precluded the county from designating management employees therein as an appropriate bargaining unit separate from nonmanagement employees therein.

The trial court held that "the creation of a separate [law enforcement] management unit of peace officers abridges the statutory right that the management employees have to join and participate in the Organization of Deputy Sheriffs. . . ." Although we have phrased the basic issue in a different manner by placing emphasis on the postulated inconsistency of the two sections of MMB, we are not in disagreement with the trial court's statement that the issue was whether the civil service commission had the power to create the two separate bargaining units for the county's deputy sheriffs if they are opposed to being divided.

Appellant contends that MMB contemplates separate representation units determined or defined as to job classification included within an appropriate unit by the public agency and employee organizations whose right to represent such units is determined by vote of the employees "of the agency or an appropriate unit thereof." (§ 3507.) Grodin points out that the phrase "appropriate unit" is borrowed from the federal statute. Reference to standards of appropriateness established by NLRB decisions is arguably invited—an invitation accepted in *Alameda County Assistant Public Defenders Assn.* v. *County of Alameda* (1973) 33 Cal.App.3d 825, 829 [109 Cal.Rptr. 392], which cites and relies upon NLRB decisions.

Schneider at 1 CPER, pages 12-13, *supra,* states that in the complex matter of unit determination, MMB neither requires nor prohibits such determination. The language of section 3507 as to adoption of rules and regulations is permissive. The only limitations are that they must be (a) preceded by "consultation in good faith" with employee organizations; (b) rules promulgated must be reasonable; and (c) section 3507.3 requires that professionals must be allowed the option of separate representation in an organization of similar employees—an aspect not here involved. Nor is the question of whether or not mandamus would issue at the instance of an employees' organization if the governing body refused to make any unit determination. The point is that such determination is for the agency as employer subject only to the

---

otherwise in this chapter, this section does not otherwise limit the right of employees to be members of and to hold office in an employee organization."

restrictions set forth above. (Cf. Grodin, *supra,* 23 Hastings L.J. pp. 741-742.)

The record herein reflects considerable consultation between the employees involved with various county officers before the commission's hearing that resulted in the creation of the management unit that is here sought to be nullified. Evidence was taken at said hearing. It appears not to have been reported but various witnesses testified to the gist of it in court. As to such unit determination and the designation of management employees made by the commission, the only criteria for judicial review provided by MMB is that of reasonableness. (Grodin, *supra,* 23 Hastings L.J. p. 741.)

Contrary to federal practice, by virtue of the broad definition of "public employee" in section 3501, subdivision (d), which excludes only elected officials and those appointed by the Governor, MMB extends organizational and representation rights to supervisory and managerial employees without regard to their position in the administrative hierarchy. The act is silent about their unit placement. The California Legislature thus minimized the potential or actual conflict of interest that, as mentioned in *NLRB* v. *Bell Aerospace Co.* (1974) 416 U.S. 267, 271-272 [40 L.Ed.2d 134, 141-142, 94 S.Ct. 1757], was the basis for the total exclusion of management employees that obtains under federal law.[5]

■ Where a legislative action by a local governmental agency is attacked as unreasonable, the burden of proof is on the attacking party. Such regulations are presumed to be reasonable in the absence of proof to the contrary. (*Fillmore Union High School Dist.* v. *Cobb* (1935) 5 Cal.2d 26, 33 [53 P.2d 349]; *Dept. Alcoholic Bev. Control* v. *Alcoholic Bev. Control Appeals Board* (1959) 169 Cal.App.2d 785, 792-793 [338 P.2d 50].) If reasonable minds may be divided as to the wisdom of a board's action, its action is conclusive and courts should not substitute their judgment

---

[5]Grodin, *supra,* 23 Hastings L.J. page 740, uses the phrase "inevitable conflicts of interest." Schneider, *supra,* 3 CPER 1, 16-17, postulates that in the public sector, conflict of interest between management and supervisory employees is not as clear-cut as it is in the private sector because (a) supervisorial powers are ordinarily qualified or limited by civil service and merit systems in a manner that takes supervisorial employees out of LMRA's definition; (b) all ranks of public employees share common goals and have a community of interest in the functioning of their common employer—the public as represented by the particular agency; and (c) the high proportion of professionals in both supervisory and rank-and-file positions "reinforces the cohesiveness that inheres in public employment." He also notes that in the private sector unions do not ordinarily accord membership to such employees—thus preserving historic Them vs. Us (!) separations between labor and management.

for that of the board. (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137].) We are of the opinion that the reasonableness or appropriateness[6] of the unit here under attack finds support in the following considerations: (a) the existence of actual or potential conflicts of interest where management employee's loyalties may be split between the employers' interests and those of employees; (b) history of collective bargaining; (c) the greater responsibility of management employees for the efficient functioning of a department constitutes a community of interest not necessarily shared by rank-and-file employees; (d) lack of reason why a sheriff's office should be treated differently as to management employees than any other county office; and (e) the public interest served by a sheriff charged with vitally important functions of law enforcement, is such that if a governing agency determines that he, as the representative of the public employer, should be entitled to the undivided loyalty of his managerial and confidential employees, we cannot say this determination is either unreasonable or not in the public interest.

We have noted that MMB differentiates between the designation of appropriate bargaining units and the formation of employee organizations. When the Legislature departed from the federal policy of excluding management employees and gave them organizational and representation rights, it must have been aware of the sometimes stormy developments in labor relations that gave rise to the exclusionary federal policy and practice. The trial court, in its memorandum opinion, read into the language of section 3507.5 (*ante*, p. 336), the sole purpose of restricting such employees from bargaining for the organization to which they belong. The judge stated that this was made doubly clear by the provision that "this section does not otherwise limit the right of employees to be members of and hold office in an employee organization." At first reading, under section 3507, which declares MMB's purpose and intent, that right would appear to be an absolute right of employees to "join organizations of their own choice and be represented" by them. But the 1972 amendment stating that MMB was not intended to bind public agencies which provide procedures for the

---

[6]In the absence of any standards other than reasonableness to determine what are "appropriate units" recourse must be had to federal standards where the following factors have been considered by NLRB: Community of interests; history of bargaining; desires of employees; nature and organization of business; public interest, etc. (18 C Business Organizations, Kheel, Labor Law § 14.02.1.) Schneider's study, *supra*, 3 CPER, page 4, names three criteria commonly in use in the public sector, viz.: Community of interest; employer's authority to bargain effectively at the level of the unit; and, the effect of a unit on the efficient operation of the public service.

administration of employer-employee relations in accordance with the provisions of this chapter (a clear reference to § 3507) preserves to local agencies, as employer, rule making power as to recognition of organizations and of unit determination therefor. Insofar as such rules and regulations are reasonable and are promulgated after consultation with such organizations, the "absolute" right to join and to be represented by an organization of the employee's choice is subject to such rules. *City of San Diego* v. *American Federation of State, etc. Employees* (1970) 8 Cal.App.3d 308, at page 312 [87 Cal.Rptr. 258], states: "Of particular significance is the fact the employer-employee relationship in public employment is the product of law—constitutional, legislative and decisional—rather than the product of a contract as in private employment. [Citations.] The terms and conditions of public employment are fixed by the public through the processes of law, and acceptance of such employment requires acceptance of the processes by which the terms and conditions of employment are fixed, i.e., by law rather than by contract."

The strict interpretation of section 3507.5 adopted by the trial court is difficult to reconcile with the unit determination rights contained by necessary implication in section 3507. Section 3507.5 speaks of organizations and not units. Such view also overlooks the possibility that in giving a governmental agency the right to designate management employees and to restrict them from representing an organization that includes nonmanagement employees, the Legislature may have intended to retain to the public employer some measure of protection against conflict of interest considerations that might arise when management employees' loyalties are split between the employer's interests and those of employees while preserving to such employees an optional right to form their own organization and thus escape the restriction of said section 3507.5.

■ When reasonably possible, courts must harmonize statutes, reconcile seeming inconsistencies and construe them to give force and effect to all provisions thereof. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276].) ■ Courts may not add to or detract from a statute or insert or delete words to accomplish a purpose that does not appear on its face or from its legislative history.[7] (*Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97];

---

[7]Grodin, *supra,* 23 Hastings L.J. page 719 contains discerning comment on the legislative history of the act. He refers to Ross, *The California Experiment: Meet and Confer for All Public Employees* (CPER, Sp. Issue, June 1969) where it is suggested that the act made it through the Legislature precisely because it was ambiguous (p. 20).

*Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 4 [327 P.2d 928].) ■ Administrative regulations are subject to the same rules of construction and interpretation that apply to statutes. (*Lertora* v. *Riley* (1936) 6 Cal.2d 171 [57 P.2d 140]; *Duke Molner etc. Liquor Co.* v. *Martin* (1960) 180 Cal.App.2d 873, 884 [4 Cal.Rptr. 904].) ■ In the light of these rules, we have examined sections 9, 10 and 11 of San Mateo's Resolution 28068 which provide for the establishment of representation units, their modification, and establishes criteria to be considered in the determination of modification of appropriate representation units. We find nothing unreasonable in them. The segregation of management employees into a separate bargaining unit is appropriate under standards used by N.L.R.B. heretofore discussed and under factors (b) (c) (d) and (f) of[8] section 11 of said resolution. Subdivision h of said section 11 reads, "Management and confidental employees shall not be included in the same unit with non-management or non-confidential employees." A tabulation prepared by Ross* and De Gailly† for their article in 8 CPER 6 shows that eight counties (Alameda, Los Angeles, Marin, Sacramento, San Benito, San Mateo, Santa Clara and Ventura) and five cities (Berkeley, Concord, Glendale, Pasadena and Sacramento) have like unit limitations. ■ Interpretation and application of the statute, by administrative agencies charged with its implementation, although not determinative, is an aid to construction that is entitled to weight unless it is clearly erroneous. The number of agencies that have made this segregation of management employees also argues the reasonableness thereof.

■ Finally, we must determine whether or not the segregation of management employees who are in law enforcement into a separate unit is a prohibition of peace officers' rights under section 3508 "to join or participate in employee organizations which are composed solely of such peace officers . . . which are not subordinate to any other organization." ODS advances no reason why a sheriff's department should be treated differently as to management employees than any other department of the county. Autonomy of such organizations is required by the last phrase of section 3508. The plural use of "employee organizations"

[8]These are: "b. The effect of the proposed unit on the efficient operation of County services, and sound employment relations. [¶] c. The history of employee relations in the unit, among other employees in the County, and in similar public employment and private industry. [¶] d. Similarity of duties, skills, wages and working conditions of employees. . . . [¶] f. The effect on the existing classification of dividing a single classification among two or more units.

*Professor of economics. Mills College

†Assistant editor. CPER.

appears to recognize the possibility of the existence of more than one peace officer employee's organization within the agency.

ODS argues that section 11, subdivision h of said resolution is arbitrary, capricious and unreasonable. The argument, however, is based upon a faulty concept of what is meant by "management employees" which is viewed as a contradiction in terms. But this is confusing ownership with management. The county argues that the designation of management employees was authorized by section 3507.5 and their placement in a separate unit was authorized by section 3507 and that neither the designation nor the creation of the management unit had any effect upon these employees' right to maintain their membership in ODS, or, if they so elect, to form their own peace officers' management organization. The county acknowledges that these management employees as an appropriate unit, are free to select ODS as their representative organization. The county's arguments are persuasive and reconcile the seeming inconsistencies between the code sections involved.

Our decision herein does not rest upon the estoppel which the county attempts to predicate upon the fact that the action protested was initiated at the request of the officers involved. Basic elements of estoppel are missing.

Respondent officers' arguments attacking the finding that lieutenants were properly designated as managerial employees overlook the testimony of the personnel director, as well as that of Lieutenant Hoover which described duties and authority that brought him within the definition of a management employee. The findings in this regard were supported in the record. We explain that this comment is made solely because if the involved employees were not within the definition of management then the import of the resolution and of the later modification could not be considered reasonable under section 3507.

The judgment is reversed and the trial court is instructed to dismiss the petition. Each side will bear its own costs.

Draper, P. J., and Brown (H. C.), J., concurred.

The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied June 4, 1975.