[Civ. No. 39641. First Dist., Div. Two. Dec. 22, 1977.]

UNITED CLERICAL EMPLOYEES, LOCAL 2700 et al.,
Plaintiffs and Respondents, v.
COUNTY OF CONTRA COSTA et al.,
Defendants and Appellants.

120

COUNSEL

John B. Clausen, County Counsel, and E. V. Lane, Jr., Deputy County Counsel, for Defendants and Appellants.

Gillin & Jacobson and Ralph L. Jacobson for Plaintiffs and Respondents.

OPINION

ROUSE, J.—Defendants, County of Contra Costa et al. (hereinafter appellants or County), appeal from the trial court's judgment granting a permanent injunction in favor of respondents. The facts leading to the controversy are relatively simple and may be stated as follows:

Pursuant to county ordinance No. 70-17 (Ordinance),[1] United Clerical Employees (UCE) requested recognition of a supervisory clerical unit of employees of the County and districts governed by the board of supervisors of the County. On October 24, 1972, the board of supervisors designated a supervisory clerical unit which was to include the classifications of supervising clerk I, supervising clerk II, supervising account clerk, and hospital reception center supervisor. Subsequently, an election was held. UCE won the election and was established as the sole representative of the bargaining unit. The representation by UCE was not limited to the supervisory clerical unit, but extended to other nonmanagement employees as well.

Respondents Ethel Brown and Edith Davison were employees of the County in positions designated as supervising clerk I. On May 15, 1973, both were selected by UCE to serve as representatives of the supervisory clerical unit in the 1973 meet and confer sessions with the County. In a letter dated May 16, 1973, appellants notified UCE that Davison and Brown were management employees and thereby precluded from

---

[1]The designation "Ordinance" encompasses both Ordinance No. 70-17, adopted in 1970, and its 1973 modification (Ordinance No. 73-32) enacted pursuant to Government Code, section 3500 et seq. (Meyers-Milias-Brown Act (MMB Act).)

representing UCE in relations to county management (Gov. Code,[2] § 3507.5; Ordinance, §§ 34-4.030, 24-7.710 (now § 34-8.010[3]). On this basis, appellant refused to meet and confer with respondents Brown and Davison as representatives of the supervisory clerical unit.

Thereupon respondents brought an action against appellants seeking a temporary restraining order, preliminary and permanent injunctions and declaratory relief. The trial court first issued a temporary restraining order enjoining appellants from enforcing Ordinance section 24-7.710 and from refusing to recognize Brown and Davison as representatives of their unit. The order was followed by a preliminary injunction which, in effect, kept in force the temporary restraining order previously issued. On November 22, 1974, the matter went on trial. After receiving both oral and documentary evidence, and after considering the legal arguments of the parties, the trial court, sitting without a jury, found inter alia that the persons classified as supervising clerk I did not in fact exercise and possess the supervisory authority which would have rendered them management employees within the meaning of the Ordinance, and that the employees in the supervisory clerical unit of the County were not management or confidential employees within the purview of section 3507.5. Accordingly, the trial court issued a permanent injunction enjoining appellants from designating *all* employees exercising supervisory authority as management employees and from refusing to recognize persons in the position of supervising clerk I as representatives of UCE in matters concerning wages, hours and other conditions of employment.

Before discussing and analyzing the issues raised by the parties, we first set out the essential statutory and regulatory provisions upon which the principal issues are predicated. To start with, section 3507.5, the pivotal section of the MMB Act, provides that "In addition to those rules and regulations a public agency may adopt pursuant to and in the same manner as in Section 3507, *any* such *agency may adopt reasonable rules and regulations providing for designation of the management and confiden-*

---

[2]Unless otherwise indicated, all statutory references herein are to the Government Code.

[3]Ordinance section 24-7.710 (now § 34-8.010) provides that "*Management employees* and confidential employees, who choose to remain or to become members of an employee organization which includes as members employees who are not management or confidential employees, *shall not serve as representatives* of such organization *in relations with county management* and/or the board on matters within the scope of representation, or in a grievance procedure." (Italics added.)

*tial employees of the public agency and restricting such employees from representing any employee organization,* which represents other employees of the public agency, *on matters within the scope of representation.* Except as specifically provided otherwise in this chapter, this section does not otherwise limit the right of employees to be members of and to hold office in an employee organization." (Italics added.)

A "Management employee" who is proscribed from representing the union in labor disputes of the County (see Ordinance, § 34-8.010, *ante,* fn. 3), is defined by the Ordinance as follows: " '*Management employee*' *means* the County Administrator, Assistant County Administrator-Director of Personnel, Assistants to the County Administrator, department heads, assistant department heads, heads and assistant heads of departmental divisions, programs or districts and *employees exercising supervisory authority.*" (§ 34-4.030; italics added.)

Finally, pursuant to Ordinance, section 34-4.050, " 'Supervisory authority' means authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or responsibly to direct them, or to adjust their grievances or effectively to recommend such action, if the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment."

Appellants' primary contention on appeal is that the trial court erred in finding that none of the persons with title of supervisory clerk I did in fact exercise supervisory authority as spelled out in section 34-4.050 of the Ordinance, and that employees within the supervisory clerical unit failed to qualify as management employees within the meaning of section 3507.5. Respondents, in turn, argue that the definition of the Ordinance is overbroad and that it unreasonably designates supervisors as management employees thereby depriving the supervisory members of the union of important rights. It thus appears that, aside from the evidentiary problem, the crucial issue lying at the heart of the controversy is whether the challenged provisions of the Ordinance which do include employees exercising supervisory authority in the management are reasonable, and/or whether such provisions delineate the scope of management employees as used in the statute too broadly, thereby rendering them invalid.

■ At the outset, we must recognize a well-established principle of law which governs our conduct in the determination of this matter, namely, that where a legislative action by a local government agency is attacked as unreasonable, the burden of proof is on the attacking party. Such regulations are presumed to be reasonable in the absence of proof. (*Fillmore Union High School Dist.* v. *Cobb* (1935) 5 Cal.2d 26, 33 [53 P.2d 349]; *Dept. Alcoholic Bev. Control* v. *Alcoholic Bev. Control Appeals Board* (1959) 169 Cal.App.2d 785, 792-793 [388 P.2d 50].) Moreover, if reasonable minds may differ as to the wisdom of the action of the local board or agency, its action is conclusive and the courts should not substitute their judgment for that of the local authority. (*Organization of Deputy Sheriffs* v. *County of San Mateo* (1975) 48 Cal.App.3d 331, 338-339 [122 Cal.Rptr. 210].)

■ The state labor relations law (MMB Act) does not identify that class of persons which constitutes "management employees" and no California case has been cited to us which delineates the scope of activities of a management employee. In passing upon the crucial question of whether the supervisory personnel here in dispute were reasonably categorized as management, we observe that the MMB Act does not use the term "supervisor," nor does it designate "supervisory personnel" as a species of management. Apparently, as a class, supervisors are not prohibited from membership and active participation in employee organizations, since section 3501 defines an "employee" within the broadest possible terms, excluding only elected officials and those appointed by the Governor.[4]

Section 3507.5 empowers a public agency to "adopt reasonable rules and regulations providing for designation of the management and confidential employees of the public agency and restricting such employees from representing any employee organization, which represents other employees of the public agency, on matters within the scope of representation. . . ." Thus, Contra Costa County, as the public agency involved, was authorized to enact the ordinance here in controversy, provided that the designation of certain employees as management thereunder was reasonable.

---

[4]Section 3501, subdivision (d), provides that " '*Public employee' means any person employed by any public agency,* including employees of the fire departments and fire services of the state, counties, cities, cities and counties, districts, and other political subdivisions of the state, *excepting those persons elected by popular vote or appointed to office by the Governor* of this state." (Italics added.)

■ In the absence of controlling state law in this field of labor relations it is generally agreed that we may look to the federal law for guidance in seeking to interpret state provisions whose language parallels that of the federal statutes. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; see, to the same effect: *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 617, fn. 10 [116 Cal.Rptr. 507, 526 P.2d 971]; *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 589-590 [105 Cal.Rptr. 521, 504 P.2d 457]; *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 459 [2 Cal.Rptr. 470, 349 P.2d 76].) In this instance, the language of section 34-4.050 of the County Ordinance, which defines supervisory authority, is virtually identical to the language used in the federal statute. (29 U.S.C. § 152(11).)[5] The federal law makes it very clear that a supervisor is not an employee, but belongs to the management. (29 U.S.C. § 152(3);[6] *International Union of United Brewery etc.* v. *N.L.R.B.* (D.C. Cir. 1961) 298 F.2d 297 [111 App.D.C. 383].) This attitude was explained by the court in the case of *Beasley* v. *Food Fair of N.C., Inc.* (1972) 15 N.C.App. 323 [190 S.E.2d 333, 335]: "In defining 'supervisors', Congress had in mind supervisory personnel traditionally regarded as a part of management and to place into the employer category those who act for management in formulating and executing its labor policies. International Union of United Brewery, etc. v. N.L.R.B., 111 U.S.App.D.C. 383, 298 F.2d 297 (1961) cert. denied, Gulf Bottlers, Inc. v. N.L.R.B., 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962). In excluding supervisors from the rights and protections afforded employees, the purpose was to assure to employers their right to select their supervisors and to procure the loyalty and efficiency of their supervisors. National Labor Rel. Bd. v. Retail Clerks Intern. Ass'n., 211 F.2d 759 (9th Cir. 1954) cert. denied 348 U.S. 839, 75 S.Ct. 47, 99 L.Ed. 662 (1954). . . ."

■ Respondents contend that section 3507.5 should be given strict interpretation and that the category of supervisory personnel here in

---

[5] 29 United States Code section 152(11), reads as follows: "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

[6] 29 United States Code section 152(3), provides that "*The term 'employee' shall include any employee,* and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or

question ought to be excepted from the class of management employees as a matter of legal policy. In essence, they argue that to permit the supervising bargaining unit to organize, on the one hand, and then, on the other, preclude it from being represented by one of its own members, is irrational, anomalous and paradoxical and results in withdrawal of important representational rights from the members of the units, the very persons whose interests are in the forefront and affected most.

On the surface, respondents' argument is persuasive. However, a more thorough analysis of the issue demonstrates, to our satisfaction, that it cannot be accepted for a number of reasons. For one thing, it is clear that the anomaly or incongruity, if any, is directly attributable to the language of 3507.5 itself, which expressly authorizes the public agency to define management and confidential employees and prohibits either of them from representing the employee organization in labor disputes arising from the employment relationship with the public agency. Respondents' charge, therefore, belongs to and ought to be directed to the Legislature which enacted the statute, rather than to the court or the county which modeled and adopted the ordinance pursuant to the statute.

Also, we believe that the ordinance in question is based upon sound public policy and for that reason is not subject to legislative challenge. The statute grants the class of management employees the right of representation, but, in order to establish a healthy management-labor relation, it seeks to avoid an undesirable situation where management would deal with management. It takes no vivid imagination to see that, due to its closeness to management, the supervisory personnel might (and in many instances do) possess divided loyalty, rendering them ill-equipped to conduct labor negotiations and settle sensitive labor disputes from the standpoint of both the employer and the union. Recognizing the inevitable conflict of interest deriving from divided loyalty, the authorities and legal scholars go even further than the statute and either question the extension of representation rights to supervisory

---

because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, *but shall not include* any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or *any individual employed as a supervisor,* or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined."

and managerial employees,[7] or urge legislative amendment of the MMB Act to exclude supervisors from coverage by negotiated agreements.[8]

Of course, we are mindful of a fundamental difference between the objectives of the federal law in this field and those which are sought to be accomplished in the MMB Act: the former is concerned principally with labor relations between management and its employees in the private sector, whereas the latter focuses upon that relationship as it exists in the public sector. Thus, we assume that we are not bound to accept and apply, unqualifiedly, the somewhat rigid federal concepts of supervising authority in our attempt to determine the reasonableness of Contra Costa County's ordinance.

■ There is, nevertheless, ample authority for the proposition that the determination of "managerial" or "supervisory" is a matter of degree and depends on the authority actually exercised. (*NLRB* v. *Bell Aerospace Co.* (1974) 416 U.S. 267, 286 [40 L.Ed.2d 134, 149, 94 S.Ct. 1757]; *Palace Laundry Dry Cleaning* (1947) 75 N.L.R.B. 320, 323, fn. 4; *Reinbold* v. *City of Santa Monica* (1976) 63 Cal.App.3d 433 [133 Cal.Rptr. 874].) Whether an employee is a supervisor who possesses genuine management prerogatives and exercises independence of judgment is essentially a question of fact. (*N.L.R.B.* v. *Bama Company* (5th Cir. 1965) 353 F.2d 320, 322; *N.L.R.B.* v. *Florida Agricultural Supply Company, etc.* (5th Cir. 1964) 328 F.2d 989, 991; *N.L.R.B.* v. *Swift and Company* (1st Cir. 1961) 292 F.2d 561, 563.) ■ The factual deter-

---

[7]In an article entitled, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts,* appearing in 23 Hastings L.J., at page 719, Professor Joseph R. Grodin observed that "The act appears to extend representation rights to supervisory and managerial employees without regard to their position in the administrative hierarchy—a highly questionable proposition to begin with in view of the inevitable conflicts of interest involved [p. 740] . . . .

"This result follows from the broad definition of 'public employee' in section 3501(d), excluding only elected officials and those appointed by the governor. It is contrary to the situation under the LMRA [Labor Management Relations Act, 29 U.S.C. §§ 141-187], which excludes supervisory and management personnel from the definition of 'employee.' " (P. 740, fn. 89.)

[8]In an article entitled, *Problems in Representation of Supervisors,* 8 Cal. Public Employee Relations 1, Messrs. Edward Reith and Harold S. Rosen suggested that "we should face up to the fact that organization of supervisory personnel at any level poses real management difficulties—not in theory, but in actual practice. . . . [¶] [T]he organized supervisor enjoys a 'best of both worlds' situation. He is privy to, or has access to, the managerial establishment and is able to plead his case privately. If he doesn't succeed, he can get a second shot through his organization in negotiations. . . . [¶] [I]t is intrinsically unsound to strive to inject a strong sense of management unity in a supervisor without relieving him concurrently of organizational loyalty." (Pp. 3-4.)

mination, however, does not depend solely on the job title, but rather on all the facts of the case. Obviously, supervisors who do not, in fact, exercise supervising authority, as described in the Ordinance, do not qualify as management employees, hence, cannot be deprived of their rights to represent fellow employees in their bargaining unit. Under these circumstances, we believe that respondents' assertion that by conferring sheer supervisory job titles the county may "bootstrap" certain employees into the management category and thereby strip them of such representational rights, must fail. For the same reason, we may discount respondents' contention that, under the Ordinance, the supervisory clerical unit may be represented only by others than the members of the unit itself.

Our examination of the authorities in this field persuades us that the statutory and decisional law seeks only to prohibit management from dealing with itself and to prevent persons of divided loyalty from participating in the negotiation and settlement of sensitive and delicate labor disputes. However, where, as we shall see in this case, the facts indicate that certain persons possessing supervisory job titles do not in reality exercise the powers and prerogatives of supervisors, they are free to represent the union in its negotiations with the employer and the proscription set forth in the Ordinance as to "real" supervisors is not applicable as to them.

Accorded the most favorable interpretation and weight, respondents' arguments add up to nothing more than that a different regulatory definition of "management employee" would have been equally reasonable. We have no quarrel with that position as an abstract proposition. However, this quantum of showing is insufficient to overturn the legislative action of a local authority. ■ It is elementary that if reasonable minds may be divided as to the wisdom of a legislative action, the latter is conclusive and the courts are powerless to substitute their judgment of reasonableness for that of the legislative body. (*Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* 48 Cal.App.3d at pp. 338-339.)

■ We conclude that the ordinance here in question, which defines management employees in such a manner as to include employees exercising supervisory authority, is neither unreasonable nor overbroad. ■ Now we must determine whether, in light of the language of the ordinance and the facts of the case, the trial court was correct in

concluding that none of the supervising clerks I in the bargaining unit did, in fact, possess and exercise supervisory authority.

Our review of the record in this case indicates that there is substantial evidence supporting the view that respondents Brown and Davison in actuality did not exercise supervisory power and as a consequence the permanent injunction in regard to them was properly granted. Although, under the heading of "Typical Tasks," the job description of supervising clerk I enumerates that the employee in this position interviews and selects or recommends selection of prospective employees, and also that such person participates in the maintenance of employee discipline, documentary evidence introduced at trial shows that respondents Brown and Davison had no power to hire, fire, promote or transfer employees or to make policy recommendations to this effect. In addition, Miss Brown's trial testimony underlined that while she assigned work to seven girls who worked for her and took part in the hiring process, she had no control over the promotion, discipline, suspension, lay-off, or discharge of employees.

However, with regard to the other two supervising clerks I, both of whom belonged to the same bargaining unit, the record discloses an entirely different picture. Patricia Gillmore's testimony, which was uncontroverted and was corroborated by her immediate supervisor, disclosed that, when there is a vacancy in any of the seven positions over which she has supervision, she interviews the candidates referred to her by Civil Service and then makes a recommendation to the assistant chief in charge of personnel, who always accepts that recommendation; that on one occasion she denied a request for promotion of one of her subordinates and on three occasions has recommended promotions. All of her recommendations were accepted. She has administered discipline to subordinates by writing five or six letters of reprimand, each of which was placed in the personnel file of the individual concerned. She has dealt with grievances of subordinate employees, which grievances were settled at her level.

In the case of Miriam Roberts, another supervising clerk I, whose testimony was also uncontroverted, the record discloses that she interviews personnel referred to her by Civil Service, makes her selection and then "call[s] upstairs to the Administrative Section who handles the paper work." She decides whether or not employees under her supervision should be suspended or discharged from employment. She is

involved in the transfer of such employees to other divisions or within the department. She has also been involved in adjusting grievances of subordinate employees. Obviously, in each instance, such activities involve the exercise of discretion and independent judgment.

Thus it appears that, contrary to the trial court's determination, not all persons classified as supervising clerk I in this case can be eliminated from the management category as defined in the County Ordinance. The uncontradicted evidence substantially demonstrates that, in their relationship to subordinates, Gillmore and Roberts *actually* performed hiring, firing and disciplinary functions. Both are "exercising supervisory authority" within the meaning of section 34-4.030 and section 34-4.050 of the County Ordinance. The fact that such actions are "rubber stamped" by their immediate supervisors does not detract from the de facto aspect of such activities.

Accordingly, we conclude that as to these two employees and other supervising clerks I similarly situated, the granting of a permanent injunction must be held to be erroneous. It appears that, in Contra Costa County at least, persons identified as supervising clerks I perform a variety of assigned tasks; thus, each case must be determined on its own facts, applying as reasonable guidelines those criteria which have been established by the County Ordinance.

The judgment is modified so as to limit the scope of the permanent injunction solely to respondents Brown and Davison. As so modified, the judgment is affirmed.

Taylor, P. J., concurred.

COHN, J.,* Concurring and Dissenting.—I concur in the decision insofar as it affirms the trial judge's decision to issue the injunction as to respondents Brown and Davison but dissent from the modification of the injunction insofar as it limits its scope to those two respondents.

Realizing that the dissent of a briefly tenured pro tem. justice has about the same stature as a flea on an elephant and being ever mindful

---

*Assigned by the Chairperson of the Judicial Council.

that fools rush in where angels fear to tread (with apologies to the old popular song with that title), I nevertheless wish to take advantage of my First Amendment rights and register my thoughts on some phases of the Meyers-Milias-Brown Act (hereinafter referred to as MMB).

At the outset, it should be noted that the trial judge, having heard and weighed the evidence, found that persons classified as supervising clerk I were not in fact exercising supervisory authority, the only provision of ordinance section 34-8.010 under which a supervising clerk I might have come. There was substantial evidence to support that finding, and the judgment can be affirmed solely on that basis.

However, the decision need not rest on that point alone, and there are important issues bearing on the general problem. that should be discussed. The first such issue is whether it is reasonable for the county ordinance to eliminate all employees who are "exercising supervisory authority" from the bargaining process. The thrust of appellants' argument seems to be that since section 34-8.010 merely follows the federal Labor Management Relations Act (L.M.R.A.) in banning all supervisors from the bargaining table, a fortiori it is a reasonable rule.

On the contrary, the MMB Act was adopted in 1968 modifying its predecessor the Brown Act adopted in 1961. Previously, the L.M.R.A. was adopted by Congress in 1947, and used the term "supervisor." If the California Legislature had wanted to use the term "supervisor" in the MMB Act rather than the term it used, "management," it had plenty of opportunity. This leaves one with the logical conclusion that the drafters of the MMB Act had something different in mind than "supervisor" when they used the word "management."

I further note that the objectives of L.M.R.A. and MMB are completely contrary: L.M.R.A. is aimed at private employers and employees and completely *eliminates government and governmental agencies from its scope* (29 U.S.C.A. § 152), whereas MMB's *entire focus is on governmental agencies and their employees* (§ 3500 et seq.). With this in mind, it would seem reasonable to conclude that supervisors in the private sector being wholly dependent on their superiors for advancement might well be in a different position than supervisors in the public sector who are more dependent on civil service examinations for advancement than on the good will of their superiors. Additionally, supervisors in the private sector are generally excluded from unions

whereas supervisors in the public sector under MMB may join a union (§§ 3500, 3507.5) and in this case did. There is certainly no basic reason in the governmental sector to believe that those supervisors on the low end of the totem pole tend to identify with management on the high end rather than with the employees that they supervise. It's about as logical as equating an army corporal with a four-star general or the Secretary of Defense insofar as management of the army is concerned. Furthermore, the supervisors as members of the union have a direct financial interest in the outcome of the negotiations.

The obvious purpose of section 3507.5 is to prevent management from bargaining with management. To that extent, a governmental agency may adopt reasonable rules to implement this purpose. To allow a rule forbidding anyone who exercises supervisory powers from participating in the bargaining process regardless of any real management function tends to emasculate the purpose of MMB, i.e., "to promote full communication between public employers and their employees . . ." (§ 3500). Inasmuch as it would be up to labor (the union) to pick supervisors, presumably on merit, to be its negotiators, what possible purpose is accomplished by management's refusal to deal with them under the guise that they are a part of management. It only deprives the union of its most competent representatives. We believe that we can safely assume that section 3507.5 was not added to MMB to weaken labor's position at the instigation of management. And yet, the majority would eliminate almost everyone who is intelligent enough to pass a civil service examination for a supervisory position. It is difficult to ascertain what stake the defendants have in depriving plaintiff United Clerical Employees of its chosen representatives, except to eliminate its most capable people. A noted but nameless great philosopher once observed that "The proof of the pudding is in the eating," which sage remark is peculiarly appropos here. The best proof that supervisors are not management oriented is that the union, representing all of the employees, chooses them as its negotiators. One must indeed be isolated from reality to believe that any minor supervisor is any less enthused about employee benefits than the supervised employees.

It seems obvious to me that if we are to give the term "management" its generally accepted meaning as that body of persons who control or direct an operation (*Goad* v. *Montgomery,* 119 Cal. 552 [51 P. 681]), there are supervisors that will be a part of management. A manager has been defined as one "who is vested with a certain amount of discretion and

independent judgment" (Black's Law Dict. (rev. 4th ed. 1968) p. 1112). Some supervisors will fit this definition but most will not and employer governments should not be allowed to eliminate all supervisors by rule.

The majority concedes that whether an employee is a supervisor who possesses genuine management prerogatives and exercises independence of judgment is essentially a question of fact but then proceeds to take the determination of that question from the trial judge where it properly belongs. They further concede that the factual determination does not depend solely on the job title, but then proceed to allow the county to eliminate employees based on job title.

The majority concedes, as it must, the fundamental differences between the objectives of L.M.R.A. and MMB but then proceeds to use L.M.R.A. cases as authority to sustain their position that supervisors generally belong to management. Supervisors who do not in fact have the authority to exercise management prerogatives fail to qualify as management employees and should not be deprived of their representational rights.

The appellants, as noted above, have attempted in ordinance section 34-4.050 to set forth the criteria for ascertaining the meaning of the term "supervisory authority" which they equate with management. In general, I have no quarrel with the county's right to set up as criteria for management responsibility the "authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees . . . ." These are powers which can reasonably be associated with management. I do register an objection to the nebulous catch-all phrases that follow: "responsibility to direct them, or to adjust their grievances or effectively to recommend such action . . . ." These terms are about as easy to grasp as a handful of water, and do not lend themselves to ready definition. They are simply thrown out to net as many fish as possible, known and unknown, in a zeal to eliminate those leaders that the employees select as negotiators. If the stated purpose of MMB is "to promote full communication between public employers and their employees . . ." (§ 3500), then the language to be used should be specific and not couched in vague generalities.

I conclude this discussion by urging that the term "management" is not to be equated per se with the term "supervisor"; that with the exceptions noted, a governmental agency may set up the criteria as set

forth in ordinance section 34-4.050 as long as the employee has the actual official power to do some or all of the things mentioned, and not just a temporary de facto power or some ersatz power to recommend; that basically management is to be equated with the making of policy rather than the mere direction of other employees; and that the rule-making power established by section 3507.5 is defined as the power to implement the MMB Act and not to amend it.

I would affirm the judgment of the trial court in full.